160 N.J. Super. 283 (1978)
389 A.2d 975
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ROBERT HERMANN AND FREDERICK W. JONES, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued June 5, 1978.
Decided June 27, 1978.
*284 Before Judges ALLCORN, MORGAN and HORN.
Mr. Donald W. Morrow argued the cause for appellant Robert Hermann (Messrs. Morrow and Benbrook, attorneys).
Mr. C. Douglas Reina argued the cause for appellant Frederick W. Jones (Messrs. Abrams, Dalto, Gran, Hendricks & Reina, attorneys; Mr. Norman J. Abrams on the brief).
*285 Mr. Oscar W. Rittenhouse, Prosecutor of Hunterdon County, argued the cause for respondent.
Mr. Alan Silber argued the cause as amicus curiae.
Mr. Alan D. Bowman, Deputy Attorney General, argued the cause as amicus curiae (Mr. John J. Degnan, Attorney General, attorney; Mr. William F. Hyland, Former Attorney General).
The opinion of the court was delivered by HORN, J.A.D.
This appeal raises for the first time before us the issue of what standard a trial judge should apply in reviewing a defendant's application for admission to a Pretrial Intervention Program (Program) where said admission is recommended by a program director with the consent of the prosecutor. R. 3:28. The converse is well-settled, that is, where the prosecutor withholds his consent it is incumbent upon defendant to "clearly and convincingly establish that the prosecutor's refusal * * * was based on a patent and gross abuse of his discretion." State v. Leonardis, 73 N.J. 360, 382 (1977) (Leonardis II).[1]
The facts leading to the application for admission are not in dispute. Defendants are teachers in a Hunterdon County high school. Defendant Hermann was indicted by the Hunterdon County grand jury for receiving and having in his possession a quantity of stolen 2 x 4's having a value of over $200, knowing said property to have been stolen, contrary to N.J.S.A. 2A:139-1. Jones was also indicted by said grand jury for knowingly or willingly aiding and abetting Hermann to receive said stolen lumber, contrary *286 to N.J.S.A. 2A:85-14 and N.J.S.A. 2A:139-1. The person from whom the lumber was allegedly acquired was a student at the same high school where defendants teach.
According to an affidavit of Hermann, he neither knew nor taught the student from whom he bought the lumber, but had been referred to him by Jones. Hermann met with the student during his lunch hour, arranged to view the lumber and, after doing so after school hours, purchased it from the student.
In accordance with the practice of the prosecutor, inquiry was made of the police who effected the arrests. The Director of Public Safety of the Township of Raritan notified the prosecutor of his objection to the admission of defendants into the program. A part of his letter reads:
1. The sensitive nature of their employment as school teachers, whose behavior has a profound effect on students of an impressionable age, makes it imperative that they be judged guilty or not guilty of the offenses charged in this matter.
2. Their involvement in the PTI program would avail nothing but leave doubts in the minds of the community as to their guilt or innocence and would make them ineffective as teachers of our children, in fact it would leave the impression with young people that breaking the law is an acceptable practice. It would also negate their effect as disciplinarians and cause a loss of respect for the profession.
The attorney for the board of education having jurisdiction of the school in which defendants taught likewise communicated with the prosecutor. A part of his letter, written at the instance of the board, reads:
* * * On behalf of the Board of Education, we wish to advise your office that the Board of Education renewed the teaching contracts for these individuals with the understanding that there would be a final adjudication of guilt or innocence of the charges which were issued against them. The Board of Education does not feel that the acceptance into a Pretrial Intervention Program satisfies this condition. Accordingly, the Board of Education would object to any recommendation that the indictment against these defendants be adjusted under the Pretrial Intervention Program.
*287 The trial judge rejected defendants' applications. In doing so he expressly disclaimed any finding that the prosecutor had acted arbitrarily or capriciously. He rested his decision on the fact that both defendants were public employees who breached their trust in their relation to students in their school, in violation of Guideline 3 of "Guidelines for Operation of Pretrial Intervention in New Jersey," adopted by our Supreme Court on September 8, 1976,[2] and also upon his "inherent power" and "judicial discretion."
When defendants applied for leave to appeal we were presented with what was tantamount to a single viewpoint  that which was advanced by each defendant, the prosecutor and the Attorney General (who filed a brief as amicus curiae)  all arguing that the judge exceeded his authority in rejecting defendants' applications and that leave to appeal should be granted. In order that we might be assured that all aspects of the issue would be earnestly explored, we appointed, on our own motion, an amicus curiae, who filed a brief and subsequently participated in oral argument on the merits of appeal. Whelan v. N.J. Power & Light Co., 45 N.J. 237, 244 (1965). We granted leave, directed that the cases be consolidated on appeal, and elected to consider and determine the matter on the papers submitted, as none of the parties desired to file any additional memoranda after oral argument. R. 2:11-2.
In essence, the arguments of defendants, the prosecutor and the Attorney General are in accord  i.e., that the standard of review in the instant case is the same as in those cases where the prosecutor vetoes a defendant's participation in a Program  patent and gross abuse of discretion.
*288 Amicus curiae disagrees and contends that the standard which should be employed in the instant case is whether the diversion is in the interest of justice. This thesis conforms to that expressed by the trial judge. We agree and affirm.
It is argued in behalf of defendants that the separation-of-powers doctrine dictates that the abuse-of-discretion standard must be constitutionally recognized. They place great weight on the language of our Supreme Court in In re Investigation Regarding Ringwood Fact Finding Cocc., 65 N.J. 512 (1974), particularly the statement:
As recognized in State v. Laws, 51 N.J. 494, 510-511, cert. denied, 393 U.S. 971, 89 S.Ct. 408, 21 L.Ed.2d 384 (1968), the prosecutor has broad discretion in selecting matters for prosecution. While his discretion is broad, it "is not unregulated or absolute" (State v. Winne, 12 N.J. 152, 172 (1953)) and it may, in appropriate circumstances, be reviewed for arbitrariness or abuse. [at 516]
We do not accept this argument. The court there was concerned with a criminal complaint which had not reached the indictment stage[3] and, in our view, when the court inaugurated the concept of pretrial diversion they could and did lay down specific rules applicable thereto.
These rules are contained in the context of Leonardis I and Leonardis II and the Guidelines. Leonardis II appears to have carefully and intentionally limited the foregoing test to cases where the prosecutor withholds his consent. The same is also true as to the Guidelines promulgated by our Supreme Court. Thus, the court said:
* * * [O]ur rule-making power must be held to include the power to order the diversion of a defendant into PTI where either the prosecutor or the program director arbitrarily fails to follow the guidelines in refusing to consent to diversion. Conversely, where the program director or the prosecutor would subvert the goals of the program by approving diversion, meaningful judicial review must also be cognizable. [73 N.J. at 375; emphasis supplied]
*289 "Meaningful judicial review," the phrase used in the same paragraph in which the court has referred to the prosecutor's or program director's "arbitrarily" failing to follow Guidelines, we must assume has an entirely different connotation from that of "abuse of discretion."
Judge Conford's concurring opinion in Leonardis II adds weight to this ratiocination. He said:
There is an unbroken line of authority that when the matter of a prosecutor's determination to discontinue or nolle pros a prosecution or indictment is involved, such action is subject to the approval of the court, at least where the matter has passed the formal complaint or indictment stage. R. 3:25-1; State v. Ashby, 43 N.J. 273, 276 (1964); In re Investigation Regarding Ringwood Fact Finding Comm., 65 N.J. 512, 515-516 (1974); State v. Conyers, 58 N.J. 123, 146-147 (1971); State v. LeVien, 44 N.J. 323, 327 (1965). Compare Federal Rules of Criminal Procedure 48(a).
The rationale for distinguishing the latter situation from one in which the prosecutor intends to go forward with a prosecution is fairly obvious. A prosecutor who is affirmatively prosecuting a criminal suspect when probable cause has been found is patently performing his duty to enforce the criminal law. State v. Winne, supra. It would be an arrogation of authority for a court to tell him to exercise his discretion differently (i.e., not to prosecute). But where a prosecutor proposes to drop such a prosecution the possibility of connivance or culpable nonfeasance, contrary to the public interest, activates a strong public policy for judicial superintendence of such a decision. [73 N.J. at 387-388]
The Guidelines provide: Guidelines 2 and 3 (i)  that a defendant must show "compelling reasons justifying his admission, and establishing that a decision against enrollment would be arbitrary and unreasonable." Guideline 8  "A defendant may be accepted into a PTI program by the designated judge * * * on recommendation of the program director, and with the consent of the prosecuting attorney and the defendant." (Emphasis supplied.) However, "[i]f a defendant desires to challenge the decision of a program director not to recommend enrollment or of a prosecutor refusing to consent to enrollment * * *," a motion is to be made before the designated judge and the "challenge is to be *290 based upon alleged arbitrary or capricious action * * *." As noted, the Guidelines are silent as to the standard to be employed in the judge's review of the prosecutor's or program director's respective consent and recommendation to divert.
R. 3:28 lends additional support to the view that the standard of review where the prosecutor consents differs from that where he withholds his consent. If in the former case application is made for a postponement of proceedings, "the designated judge may" postpone all further proceedings for a time not to exceed three months. R. 3:28(b). R. 3:28(c) (3) empowers the judge, as one of three alternatives, to order prosecution in the ordinary course either where that course is suggested by the program director or the prosecutor "or on the court's own motion."
Some analogy may be drawn from the standard of review utilized by the courts in determining whether to accept plea bargains agreed upon between defendants and prosecutors. That standard of review is "the interest of justice" standard. State v. Thomas, 61 N.J. 314 (1972). There the court said:
For if the prosecutor has agreed, as consideration for the guilty plea, that one or more other pending charges against the defendant shall be dismissed, and the judge before whom the motion to dismiss is brought feels that to grant the motion will not serve the ends of justice, then the defendant may withdraw his plea of guilty. [at 322; emphasis supplied]
The similarity between the decision to divert and the sentencing responsibility has been noted. Note, "Pretrial Diversion from Criminal Process," 83 Yale L.J., 806, 843-44 (1974).
Consistently, the American Bar Association Project on Standards for Criminal Justice, "Standards Relating to Plea of Guilty," Approved Draft 1968, § 3.3(c) and comment thereto, foster the concept that the review should be to determine whether the intervention is in the interest of justice. The comment reads in part:
*291 Notwithstanding the existence of the [plea] agreement, the trial judge must reach an independent judgment as to whether the public interest in the effective administration of criminal justice would be served by granting the concessions.
In the instant case the judge considered the diversion of defendants from the standpoint of its effect in deprecating the seriousness of their crimes as public employees, in the light of the effect upon the students and also as a breach of their public trust to set good examples for the juveniles who attend the school in which they teach. The Guidelines do not appear to have been drawn solely for the benefit of defendants; quite obviously they are also to be considered on the basis of what impact diversion would have on others.
Even PTI as a tool in the criminal system must be used primarily for the benefit of the public. We see no reason why society's interest in considering whether to divert a defendant should not be paramount to the same degree that it is in considering the imposition of a sentence. In the sentencing process the public interest is of major concern. Thus, in imposing a sentence a
* * * judge must decide in what way the interest of the public will best be served. He seeks justice to society as well as to the individual, and of course justice to the individual is itself a phase of justice to the community. If the offense has strong emotional roots or is an isolated event unassociated with a pressing public problem, there is room for greater emphasis upon the circumstances of the individual offender. [State v. Ivan, 33 N.J. 197, 201-202 (1960), per Weintraub, C.J.]
The ravages upon the public by a large number of juveniles are well known. The Legislature and courts have recently made alterations in the treatment of juveniles, in an effort to bring these ravages to a halt or to decrease their frequency. It is also well known that the special treatment of juveniles for salutary rehabilitative purposes has brought forth, with some justification, a feeling that juveniles believe that they can continue their antisocial *292 conduct with impunity because of that special treatment. They should not be encouraged in this outlook by seeing adults, to whom they should look as paragons of honesty, set free without a trial. The trial judge aptly said:
Granted that school teachers cannot be expected to provide or instill in a student all of the knowledge of basic integrity which a parent ought to provide to his child, but a teacher, in his position of trust and at least in the classroom, to a large extent stands in loco parentis. The public ought to be entitled to believe and assume that teachers will confine their instruction to the arts and crafts and sciences normally found in the curricula, and that they will not extend their influences to the point of instructing or appearing to condone crimes.
The concern of the judge as so expressed, as well as the other factors mentioned, obviously induced him to exercise his discretion to oppose diversion as not being in the interest of justice. In the totality of the circumstances we are unable to say that he erred. The order under review is affirmed.
NOTES
[1] Subsequently followed by State v. Bender, 159 N.J. Super. 465 (App. Div. 1978); State v. Barrett, 157 N.J. Super. 96 (App. Div. 1978); State v. Markt, 156 N.J. Super. 486 (App. Div. 1977); State v. Litton, 155 N.J. Super. 207 (App. Div. 1977). Leonardis I is State v. Leonardis, 71 N.J. 85 (1976).
[2] Guideline 3(i) (4) provides that in reviewing the application of a defendant for admission into a Program the nature of the offense is a factor to be considered. If the crime constituted "a breach of the public trust where admission to a PTI program would deprecate the seriousness of defendant's crime, the * * * application should generally be rejected."
[3] See R. 3:25-1.