STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
VINCENT DEMARCO, SR., DEFENDANT-APPELLANT.

Argued September 9, 1986—Decided July 1, 1987.

*Robert J. DeGroot* argued the cause for appellant (*Weiss, Turco, DeGroot & Caruso,* attorneys; *Robert J. DeGroot* and *Donald S. Rosanelli* on the briefs).

*Jared L. McDavit,* Assistant Prosecutor, argued the cause for respondent (*Richard E. Honig,* Sussex County Prosecutor, attorney).

*Mildred Vallerini Spiller,* Deputy Attorney General, argued the cause for *amicus curiae,* Attorney General of New Jersey (*W. Cary Edwards, Jr.,* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

POLLOCK, J.

This appeal raises the question whether it is permissible for a prosecutor to condition admission into the Pre-Trial Intervention Program (PTI) on the defendant's resignation from his employment as a police officer. The director of the program recommended the admission of defendant, a member of the Newark Police Department, into the program, but the program coordinator, an assistant county prosecutor, said he would consent only if defendant resigned from his position. The Law Division, however, ordered defendant's admission into the program. In an unreported decision, the Appellate Division reversed, and we granted defendant's motion for leave to appeal, 103 *N.J.* 468 (1986). We modify and affirm the judgment of the Appellate Division.

–I–

In summarizing the relevant facts, we draw upon the testimony before the Sussex County Grand Jury, which is part of the record before us. Around 1:30 a.m. on Sunday, June 17, 1984, defendant and his 27–year old son were watching television in their home on Paulinskill Lake, south of the intersection of Kill Drive and Ridge Road, Sussex County, when they heard noises that sounded like gunshots. Because mailboxes in the area had

recently been destroyed by vandals, defendant and his son went to investigate. They turned on a spotlight in the front of their home and observed a light-colored car leaving the scene. Taking his badge and placing his service revolver in his shoulder holster, defendant, accompanied by his son, entered his car and unsuccessfully tried to overtake the departing vehicle. While pursuing that vehicle, defendant observed damage to numerous mailboxes in the area. After losing sight of the departing vehicle, defendant came upon two cars parked on Ridge Road and observed an argument between the occupants of one car, Thomas J. Byrnes and Timothy P. Moore, two young men in their early twenties, and a third person, William Hulit, whom defendant recognized to be a neighbor. According to defendant, he identified himself as a police officer when he exited from his car, wearing his service revolver and carrying his nightstick in his right hand and his badge in his left hand.

Mr. Hulit explained his presence at the scene by stating that while walking his dog in his front yard, he had heard banging and observed people breaking mailboxes with a stick. He noticed a light colored car, with a license plate bearing the numerals "300." Hulit pursued that car in his own automobile, until it drove out of sight. On his return home, Hulit observed the Moore vehicle, a light-colored Volvo with the numerals "300" on its license plate, which he followed until it stopped on Ridge Road. Hulit accused Moore and Byrnes of destroying the mailboxes, which they denied.

Moore and Byrnes said they had spent the evening at a beer party, a fact that is consistent with defendant's observation that they smelled of beer. According to defendant, as he approached the two young men, he announced "I'm a police officer," whereupon Byrnes ran into the surrounding woods. Defendant testified further that Moore approached him with upraised arms and grabbed defendant's right arm. In self-defense, defendant struck Moore two or three times on the arms with his nightstick. As Moore fell, he grabbed defendant's nightstick, whereupon defendant kicked him in the chest.

The testimony of Moore and Byrnes differed from that of defendant. Moore testified that when defendant exited from his car, he ordered them against their car "or he'd fill us full of lead." According to Moore, defendant swung the nightstick at Byrnes, who ran away. Then, without warning, defendant turned and struck Moore on the head. Moore fell to the ground, and defendant hit him twice more with the nightstick, once on the head and once on the back. Both defendant and Byrnes called the State Police, who investigated at the scene. Moore was taken to the hospital, where several stitches were taken in his scalp, and where he was confined overnight.

Moore filed charges against defendant for assault, *N.J.S.A.* 2C:12–1, and defendant filed charges against Moore for assault on a police officer, *N.J.S.A.* 2C:12–1b(5)(a), and for resisting arrest, *N.J.S.A.* 2C:29–2. The Sussex County Grand Jury did not return an indictment against Moore, but indicted defendant for aggravated assault with a deadly weapon. *N.J.S.A.* 2C:12–1b(3).

In recommending defendant for admission to the PTI program, the director stated:

When interviewed, the defendant made a favorable impression and would appear to fit the various criteria enumerated in N.J.S.A. 2C:43–12(e) and the various guidelines. He has had one arrest, that charge having been dismissed. He has been steadily employed as a Lt. by the Newark Police Department for the past 26 years. Mr. DeMarco openly admitted his involvement in this offense and stated the actions he took were necessary for self-protection. N.J.S.A. 2C:43–12a states, in part, that supervisory treatment should ordinarily be limited to persons who have not previously been convicted of any criminal offense when supervisory treatment would (b) provide an alternative to prosecution for applicants who might be harmed by the imposition of criminal sanctions. This is clearly the situation in Mr. DeMarco's case where a conviction for the alleged offense could very well jeopardize his career of 26 years with the Newark Police Department.

In view of the above, it is recommended that Vincent DeMarco, Sr. be enrolled in the Sussex County Pretrial Intervention Program.

Initially, the prosecutor relied on two grounds to support his conclusion that defendant should be denied admission to PTI: the violent nature of the offense and defendant's continued attempt to justify striking Mr. Moore as an act of self-defense,

which the prosecutor contends demonstrates that defendant cannot be rehabilitated. Thereafter the prosecutor added a third ground, that the offense constitutes a breach of the public trust reposed in defendant as a police officer. The prosecutor stated he "would join in Mr. DeMarco's participation in the Pretrial Program only if he resigned his post as a Lieutenant in the City of Newark Police Department."

The Law Division disagreed and ruled that the "requirement that the defendant quit his job * * * under the circumstances of this particular case [was] not an appropriate consideration" and that the prosecutor was "wide of the mark in terms of PTI goals." Moved by considerations of "fundamental fairness and justice," the Law Division initially remanded the matter to the prosecutor and subsequently ordered defendant's enrollment into PTI. The Appellate Division reversed, finding that the prosecutor had not exhibited a patent and gross abuse of discretion.

–II–

From the inception of PTI, we have recognized that the decision to divert a defendant from criminal prosecution implicates both judicial and prosecutorial functions. *State v. Leonardis*, 71 *N.J.* 85 (1976) (*Leonardis I*). Because of the recognized role of the prosecutor, we have granted enhanced deference to prosecutorial decisions to admit or deny a defendant to PTI. *State v. Dalglish*, 86 *N.J.* 503, 513–14 n. 1 (1981). As a general rule, a trial court may not order admission over a prosecutor's objection unless the defendant can establish clearly and convincingly that the objection constitutes a "patent and gross abuse of discretion." *Id.* at 506; *State v. Leonardis*, 73 *N.J.* 360, 382 (1977) (*Leonardis II*). Respect for the prosecutor's role may occasionally result in our recognition of a decision with which we disagree. Judicial review is "available to check only the most egregious examples of injustice and unfairness." *Leonardis II, supra*, 73 *N.J.* at 384. Our scrutiny is

limited to reviewing the reasons given by the prosecutor for his or her decision. *State v. Dalglish, supra,* 86 *N.J.* at 509. It is not sufficient to reverse that we find a decision to be harsh. For a court to reverse a prosecutor's decision, the defendant must "clearly and convincingly establish that the prosecutor's refusal to sanction admission into the program was based on a patent and gross abuse of discretion." *Leonardis II, supra,* 73 *N.J.* at 382. Abuse of prosecutorial discretion results from a consideration of irrelevant or inappropriate factors, or from a clear error in judgment. *State v. Bender,* 80 *N.J.* 84, 93 (1979). The prosecutor's error must be one that will "clearly subvert the goals underlying Pretrial Intervention." *Id.* Whether the prosecutor has based his or her decision on an appropriate factor, however, is akin to a question of law, a matter on which an appellate court may supplant the prosecutor's decision. *State v. Maddocks,* 80 *N.J.* 98, 104–05 (1979). When a prosecutor fails to consider all relevant factors or considers inappropriate factors, a court may clarify the appropriate factors and remand the matter for further consideration. *Id.* at 105. If the prosecutor's abuse arises from a clear error of judgment, a court may order that a defendant be admitted into the program.

Included in the purposes of PTI are the deterrence of future criminal behavior through the receipt of early rehabilitative services and the provision of an alternative to prosecution for a qualified defendant. Another purpose is "[t]o assist in the relief of presently overburdened criminal calendars in order to focus expenditure of criminal justice resources on matters involving serious criminality and severe correctional problems." *R.* 3:28, Guideline 1.

We have previously discussed the nature and history of PTI, *Leonardis I, supra,* 71 *N.J.* 85, and the conformity of the pre-trial intervention provisions of Rule 3:28 and the Penal Code, *State v. Collins,* 90 *N.J.* 449 (1982). Guideline 3, promulgated under Rule 3:28, mandates that "consideration shall be given to the criteria set forth in *N.J.S.A.* 2C:43–12(e)," which include "the nature of the offense," *N.J.S.A.* 2C:43–12(e)(1), and

more particularly whether the offense "is of an assaultive or violent nature * * *," *N.J.S.A.* 2C:43–12(e)(10). In addition, Guideline 3(i) makes clear that the nature of the offense may be relevant to determining eligibility for PTI. It provides in part:

Any defendant charged with crime is eligible for enrollment in a PTI program, but the nature of the offense is a factor to be considered in reviewing the application. If the crime was * * * (3) deliberately committed with violence or threat of violence against another person; or (4) a breach of the public trust where admission to a PTI program would deprecate the seriousness of defendant's crime, the defendant's application should generally be rejected.

Obviously, the offense, if proven, is violent, and we shall not dwell further upon that point. Nor shall we try to resolve the controverted factual issue whether defendant's use of his night-stick was justified. Suffice it to state, in light of Moore's testimony before the Grand Jury and the subsequent indictment of defendant for aggravated assault, that the prosecutor could conclude for PTI purposes that the defendant did not act in self-defense. The final consideration, whether the offense constitutes a breach of public trust and, if so, whether the prosecutor may condition defendant's entry into PTI on his resignation as a police officer, requires more extensive discussion.

We have held that a pharmacist who stole cocaine from his employer for his personal use and not for profit had not committed a breach of the public trust. *State v. Bender, supra,* 80 *N.J.* 84. More recently, we have held that a defendant's status as a public school teacher was relevant to, but not necessarily dispositive of, his request for a conditional discharge of his plea to the possession of less than twenty-five grams of marijuana. *State v. Humphreys,* 89 *N.J.* 4 (1982). In another case, we held that a police officer who pleaded guilty to the possession of heroin did not pose "a danger to the community." *State v. Alston,* 71 *N.J.* 1, 7 (1976). *Humphreys* and *Alston* involved applications by first-time drug offenders for a "conditional discharge," which, like admission to PTI, provides for the dismissal of criminal charges. *See State v. Humphreys, supra,* 89 *N.J.* at 9–11. In *Bender,* on the other hand, the defendant unsuccessfully applied for admission to PTI.

Consistent with the great deference we accord to prosecutors' decisions, we have reversed a lower court decision to deny admission to PTI, to which the prosecutor had consented, in a case involving two public school teachers who bought stolen lumber from students. *State v. Hermann,* 80 *N.J.* 122 (1979). From the foregoing cases, we glean the principle that defendant's employment as a police officer does not necessarily preclude his admission into PTI, but that it is one factor to be considered in judging him as a whole person.

Defendant's employment as a police officer is particularly relevant because the offense involves the misuse of authority and the commission of violence against a member of the public. The prosecutor's reliance on defendant's employment as a police officer does not subvert the goals underlying PTI and does not consititute a "patent and gross" abuse of discretion. Likewise, the prosecutor is justified in viewing defendant's conduct as a breach of the public trust. A police officer is under a duty to uphold the law and maintain public safety. An unprovoked attack with a nightstick on a member of the public may properly be viewed as a breach of that duty. Nonetheless, the prosecutor was not compelled to deny defendant admission into PTI.

In that regard, defendant's counsel, in response to an inquiry at oral argument, has written a letter stating that the Internal Affairs Bureau of the Newark Police Department has established a procedure for disciplining officers for violations of department rules and regulations. As set forth in the letter,

Particular attention is paid to the type of offense charged and any identifiable evidence or reason contributing to the belief that the officer's action was premeditated, completely unjustified by the circumstances, or is of an ongoing nature or has the potential to be of an ongoing nature or the posing of danger to the general public.

In 1985, 137 officers were charged by our Internal Affairs Bureau for various violations of the departmental rules and regulations; 71 were found guilty as charged, 20 were not guilty, 18 had the charges dismissed based upon evidence produced in their defense and 5 decisions are pending. As a result of our disciplinary actions, 5 officers were dismissed from the department, 3 resigned with charges pending, 603 days of suspension were given, 11 were given official

reprimands and 4 were fined for negligent loss of property. Officers who are convicted of indictable offenses are dismissed from the department.

This unfortunate incident appears as an aberration on an otherwise unblemished record of 27 years of service as a police officer. The circumstances surrounding the evening's events lend credibility to defendant's initial response. Just a short time before the incident, in the dead of night, defendant's neighbor, Hulit, had observed vandals who had been destroying mailboxes drive down Ridge Road, a country road, in a light-colored car with a license plate bearing the numerals "300." Defendant, too, had heard banging noises and had seen a light-colored car drive away on Ridge Road. Based on his own observations and those related by Hulit, which included the similarity between the victim's car and that which Hulit had observed, defendant could reasonably have suspected that Moore and Byrnes were vandals.

The problem, however, is not the reasonableness of that suspicion, but defendant's reaction to it. If Moore and Byrnes are to be believed, as the Grand Jury so found them, defendant went berserk. Although he now argues he was acting as a private citizen, defendant was literally carrying his badge of office together with his service revolver and nightstick, which he used to initiate an unprovoked attack on Moore. Based on those facts, it was not a "patent and gross abuse of discretion" for the prosecutor to conclude that defendant, even if not on duty, was acting under the color of his office. Within the bounds of his discretion, the prosecutor could have concluded that defendant's offense arose out of his employment as a police officer, that it constituted a breach of the public trust, and that, as a condition to defendant's entry into PTI, defendant must resign from his position. Such a conclusion could be justified to prevent the commission of another act of violence by defendant while acting officially or under the color of his office.

We do not hold, or even intimate, that defendant's position as a police lieutenant compels the prosecutor to deny defendant

admission into PTI. Like the dissent, we accept the prosecutor's argument that defendant's offense may be viewed as a breach of the public trust. We also accept the prosecutor's contention that termination of defendant's employment is defensible as a means of preventing a subsequent similar offense, a contention that the dissent implicitly rejects.

Our disagreement with the dissent arises because of its contention that the prosecutor may not condition defendant's admission into PTI upon his resignation. We are unpersuaded by the dissent's distinction between defendant's continued employment as a "condition" and as a "factor" in reviewing the prosecutor's decision concerning defendant's suitability as a candidate for PTI. A fact concerning a defendant may be viewed either as a "condition" or as a "factor" or as both. In *State v. Maddocks, supra,* 80 *N.J.* at 106–08, we ruled that the prosecutor could not condition defendant's admission into PTI upon his identification of an alleged accomplice. Nonetheless, the prosecutor could consider defendant's refusal to identify the accomplice as a factor tending to establish that defendant was not amenable to rehabilitation through PTI. Here, by comparison, the prosecutor may properly view defendant's continued employment as relevant to defendant's admission into PTI. Whether that employment is considered as a "condition" to PTI entry or as a "factor" that tips the balance against entry is more semantic than real. No matter how characterized, it is within the prosecutor's discretion to decide that defendant is a suitable candidate for PTI as an ordinary citizen, but not as a police officer. As long as defendant remains a police officer, he will be authorized to wear a badge, make arrests, and, as he did on the night in question, carry both a nightstick and a gun. Thus, the present case raises graver concerns than appear from the general proposition that "[P]olicemen are in a sense always on duty and are expected to avoid breaking the law." 107 *N.J.* at 578 (Handler, J., dissenting). The Grand Jury has charged defendant with committing assault with a deadly weapon, and it is within the prosecutor's discretion to condition defendant's admission into

PTI on defendant's resignation from the public office that enabled him to commit the offense. To this extent, we believe the dissent, in restricting the relevance of defendant's employment to (1) "assessing the culpability of defendant and the gravity of the crime" and (2) "defendant's amenability to rehabilitation," takes too constrained a view of the role of defendant's employment as a police officer.

In discharging his duty to protect the public's safety, the prosecutor could decide to prevent a recurrence by assuring that defendant will not be in a position as a police officer to assault someone else. At oral argument, the assistant prosecutor advised us that if he could not condition defendant's admission on his resignation as a police officer, he would recommend that defendant be denied admission into PTI. So advised, we are loathe to foreclose defendant from PTI by ruling that the prosecutor may not so condition defendant's admission. Because of the prosecutor's position, the necessary implication of the dissent, however, is to force the defendant out of PTI and into the defense of a criminal prosecution.

In light of the information provided after oral argument, however, the prosecutor may want to reconsider whether the Internal Affairs Bureau of the Newark Police Department is the more appropriate body to determine the effect of defendant's offense on his employment. Although we recognize that the prosecutor may condition entry into PTI on defendant's resignation, arguably it would be more prudent to allow the matter to proceed before the bureau.

It is not clear to us, moreover, that the prosecutor has considered other sanctions that are less stringent but within the purposes of PTI. Those purposes include rehabilitation of defendants and the allocation of limited criminal justice resources to "matters involving serious criminality and severe correctional problems." *R.* 3:28, Guideline 1(d). It may be that the purposes of PTI could be served through counseling of defendant, his performance of some kind of community service,

or the imposition of some other condition. In suggesting that the prosecutor might want to consider other alternatives, we do not denigrate the seriousness of the charges leveled against defendant or the outrage that must be felt by Moore, who, we are informed, is pursuing a personal injury action against him. We seek only to provide the prosecutor with the opportunity to take a fresh look at defendant's application for admission into PTI.

The judgment of the Appellate Division is affirmed, as modified, and the matter is remanded to the Law Division for further proceedings consistent with this opinion.

HANDLER, J., dissenting.

The defendant, Vincent DeMarco, is a 26–year veteran of the Newark Police Department. He was indicted for a fourth-degree assault arising out of an incident that occurred at his home in Sussex County while he was off-duty and in civilian clothes. Following his indictment, DeMarco applied for enrollment into the Sussex County Pretrial Intervention Program (PTI). The PTI Program Director recommended enrollment, emphasizing DeMarco's steady employment as a Newark police officer and his admission of involvement in the offense. However, the Sussex County Prosecutor refused to recommend enrollment in PTI unless defendant resigned from the Newark Police Department. The Court upholds the prosecutor's determination, rejecting defendant's contention that to condition PTI on his resignation from employment constitutes an abuse of prosecutorial discretion. I believe that the prosecutor did not correctly apply the standards governing PTI and that his determination should be reversed. I therefore dissent.

I.

The prosecutor's refusal to recommend enrollment in PTI was initially based on the defendant's alleged use of "excessive and potentially deadly force of an assaultive and violent na-

ture." However, the prosecutor subsequently furnished a different reason for denying defendant's application. The prosecutor advised defendant's attorney "that the Prosecutor's Office of Sussex County would join in Mr. DeMarco's participation in the Pretrial Program only if he resigned his post as a Lieutenant in the City of Newark Police Department."

Defendant moved for judicial review of the prosecutor's determination, asserting that the prosecutor patently and grossly abused his discretion by conditioning PTI enrollment on defendant's resignation from the police force. The trial court agreed and held that the "requirement that the defendant quit his job ... under the circumstances of this particular case [was] not an appropriate consideration" and that the prosecutor was "wide of the mark in terms of PTI['s]" goals. The court signed an order directing defendant's enrollment into PTI. On appeal, the Appellate Division reversed, finding that the prosecutor had not exhibited a patent and gross abuse of discretion.

## II.

Effective September 1, 1979, the Legislature enacted New Jersey's Penal Code, which includes *N.J.S.A.* 2C:43–12 to –13, the pretrial intervention statutes. The Code adopts substantially the pretrial intervention program previously established by the courts under *Rule* 3:28. *State v. Dalglish*, 86 *N.J.* 503, 506 (1981). When codified, the PTI program had already been the subject of thorough and comprehensive judicial treatment. *E.g., State v. Leonardis*, 71 *N.J.* 85 (1976) (Leonardis I), and *State v. Leonardis*, 73 *N.J.* 360 (1977) (Leonardis II).

In *State v. Dalglish, supra*, 86 *N.J.* 503, the Court ruled that in challenging a prosecutorial decision denying admission into a PTI program, the defendant must "clearly and convincingly" prove that the prosecutor's determination was based on a "patent and gross abuse of his discretion." A patent and gross abuse of discretion can occur if the determination was based upon a consideration of irrelevant or inappropriate factors, or

upon an incorrect evaluation of relevant factors. *Id.* at 509. In this case, the prosecutor would deny defendant admission into PTI unless he terminated his employment as a policeman.

The prosecutor's determination is based on an erroneous view of the relevance of a defendant's employment in terms of eligibility for PTI. In my opinion, a defendant's employment will be relevant generally in only two situations. First, if it constitutes a material circumstance in connection with the commission of the crime; as such it may be an element in assessing the culpability of defendant and the gravity of the crime. Second, a defendant's employment may be relevant if it has bearing on a defendant's amenability to rehabilitation. In the first context, employment is an evidential factor in determining whether the defendant should be admitted into PTI or subjected to criminal prosecution; guilt and the seriousness of the offense are critical factors in determining whether criminal sanctions are required. In the second context, employment may be relevant in determining whether a defendant will benefit from PTI in terms of rehabilitation when the circumstances surrounding his crime do not otherwise demand criminal prosecution.

In making his determination in this case, the prosecutor has not differentiated between the possible uses of a defendant's employment as a PTI factor. At the hearing before the trial court, the prosecutor stated only that "[defendant's] status as a police officer, given the facts and circumstances of this case, the nature of the offense, certainly is a relevant factor that must be considered." The prosecutor failed to understand the relevance of employment either as a culpability factor bearing on defendant's criminality and eligibility for PTI or as a personal factor bearing on defendant's rehabilitation under PTI. The majority also miscomprehends the two related but distinct ways in which employment bears upon a defendant's admission to and treatment under the PTI program.

In determining PTI eligibility, the courts of this State have considered employment in terms of the defendant's culpability and the gravity of the crime. The most obvious use of a defendant's employment in this regard is in determining whether the crime constituted "a breach of the public trust." *R.* 3:28, *Guideline* 3(i)(4). For example, in *State v. Hermann,* 160 *N.J.Super.* 283 (App.Div.1978), rev'd on other grounds, 80 *N.J.* 122 (1979), defendants were public school teachers who bought stolen property from a student. The court on appeal emphasized the relevance of the defendants' employment in terms of the gravity of the offense and the need for criminal sanctions. The appellate court cited with approval the trial court's statement opposing diversion:

> The public ought to be entitled to believe and assume that teachers will confine their instruction to the arts and crafts and sciences normally found in the curricula, and that they will not extend their influences to the point of instructing or appearing to condone crimes. [*Id.* at 292.]

In *State v. Bender,* 80 *N.J.* 84 (1979), defendant was a licensed pharmacist who stole his employer's drugs. The prosecutor contended that defendant was ineligible for PTI because his crime constituted "a breach of the public trust." *Id.* at 96. The Court acknowledged the relevance of defendant's employment under the particular circumstances, but ruled that the public trust was not implicated because the actual crime involved the private use of the drugs. The Court stated:

> The cocaine was personally consumed, not distributed to third parties. Only defendant, himself, and his immediate employer were victimized. Thus, although defendant's *crimes were made possible by his status as a licensed pharmacist,* those crimes did not breach the trust reposed in him to protect the citizenry at large. [*Id.* at 96 (emphasis added).]

In a related context, the Court has ruled that the employment status of a defendant is relevant under the conditional discharge program provided by the Controlled Dangerous Substances Act (CDS), *N.J.S.A.* 24:21–1 to –53. In *State v. Alston,* 71 *N.J.* 1 (1976), a police officer was found guilty of possession of heroin. Prior to sentencing, defendant moved for the suspension of further criminal proceedings and for admission to a

treatment program under CDS. Affirming the trial court's decision to allow the defendant to enter treatment, the Court noted with apparent approval that the trial court was aware of "the nature of defendant's employment and took it into consideration before exercising its discretion." *Id.* at 7. We rejected, however, the State's contention that the defendant was not eligible for CDS "[b]ecause his employment status would make him 'a danger to the community,' " one of the considerations under *N.J.S.A.* 24:21–27c. *Id.*[1] In effect, the defendant's employment as a police officer was relevant, but its connection with the crime did not render the offense so serious as to warrant criminal sanctions nor did it prevent defendant from receiving the benefits of rehabilitation under the CDS treatment program.

In *State v. Humphreys*, 89 *N.J.* 4 (1982), a school teacher was charged with drug offenses, including distributing one ounce of marijuana to a former student. After pleading guilty, defendant applied for a conditional discharge under CDS. The trial court denied the application based on defendant's occupation as a public school teacher, the fact that he was dealing in controlled substances, and the existence of community anxiety over his drug involvement. We concluded that a defendant's status as a school teacher alone is not enough to show sufficient harm to the public good to warrant exclusion from CDS. However, the Court did not preclude weighing the defendant's employment status as an appropriate factor in dealing with his application. *Id.* at 13. We thus acknowledged the relevance of the defendant's employment status to assessing culpability and the seriousness of the offense in determining whether criminal prosecution was required.

---

[1]The Court stated: "We are not concerned here with a municipality's basic right to refuse to reinstate a police officer upon a proper showing that restoring him to his duties would pose a danger to the community." *State v. Alston, supra,* 71 *N.J.* at 7. *See infra* pages 581–583.

These cases illustrate that in particular contexts a defendant's employment may be relevant to the nature and quality of the crime; it may serve to underscore the defendant's culpability or the gravity of the offense. These considerations bear directly on whether a defendant should be criminally prosecuted or diverted into a non-criminal treatment program.

In the present case, it can be argued that defendant's crime breached the public trust placed in him as a police officer. Policemen are in a sense always on duty and are expected always to avoid breaking the law. *See, e.g., Simone v. Borough of Elmwood Park, Bergen County,* 7 *N.J.A.R.* 72, 89 (1983); *Speights v. City of New Brunswick,* 1 *N.J.A.R.* 435, 447 (1980); *Patrick Carroll v. City of Elizabeth,* 2 *N.J.A.R.* 26, 31 (1979). A policeman, even more than a teacher or pharmacist, should be relied on as a "paragon of honesty," *State v. Hermann, supra,* 160 *N.J.Super.* at 292, or "public trustee," *State v. Bender, supra,* 80 *N.J.* at 96. Consequently, defendant's position as a police officer can have a material bearing on whether his offense calls for criminal sanctions. Nonprosecution could encourage disrespect for the laws and for those who enforce them. Therefore, the employment of the defendant, with its public policy implications, was not *per se* an inappropriate factor for the prosecutor to weigh in denying diversion.

In this case, however, the prosecutor did not use defendant's employment as a factor for determining his eligibility for PTI; the prosecutor did not conclude that defendant's employment had a material bearing upon defendant's culpability or the gravity of the crime. Instead, the prosecutor determined that defendant was eligible for PTI, but nevertheless conditioned enrollment on defendant's resignation from the police force. Because there is no ·suggestion that this "condition" is even remotely related to defendant's prospects for rehabilitation under PTI, we can infer only that this condition was imposed as a form of punishment. To use PTI as a form of penal sanction subverts the laudatory goals of pretrial intervention, which

surely are not to provide alternative punishment but to rehabilitate worthy persons.

We have recognized the distinction between a factor that is used as a "condition" for PTI admission and a factor that is considered material in determining eligibility for PTI. In *State v. Maddocks*, 80 *N.J.* 98 (1979), one of the three reasons why the prosecutor refused to recommend PTI enrollment was the defendant's refusal "to cooperate with law enforcement officials by naming his companion in the breaking and entering." *Id.* at 103.[2] The defendant argued that conditioning his enrollment on identification of an alleged accomplice was "similar in nature to a requirement that guilt be admitted, and hence should be irrelevant to a prosecutorial determination." *Id.* at 106. The defendant pointed for support to *Rule* 3:28, *Guideline* 4, which bars a prosecutor from conditioning enrollment into PTI on an admission of guilt. The Court acknowledged that while it is improper to *condition* enrollment on an admission of guilt, it is not improper for the prosecutor to "take into *consideration* the fact that a specific defendant has refused to admit his guilt." *Id.* at 106 (emphasis added). The Court explained:

> In certain circumstances, a voluntary proffering of self-incriminatory information may indicate defendant's degree of repentence for the crime he has committed, and hence bear upon his "*amenability to correction*" and *potential "responsiveness to rehabilitation."* [*Id.* at 106.]

Contrary to the majority's assertion, *ante* at 571, I do not suggest that there are no circumstances in which a prosecutor may condition PTI enrollment. In certain cases, such a determination might be entirely consistent with the purposes of pretrial intervention. However, this will be the case only where the condition bears a rational relationship to defendant's

---

[2]The other two reasons were the seriousness of the offense and "[a] desire by the Belmar Police that a record of defendant's criminal involvement be kept because they felt he was on the periphery of other criminal investigations." *State v. Maddocks*, 80 *N.J.* at 103.

"amenability to correction" and "potential responsiveness to rehabilitation." *Id.*[3]

In this case, the prosecutor made clear at the hearing before the trial court that enrollment in PTI was conditioned on defendant's resignation from the police force: "[T]he prosecutor has considered that if the Defendant would accept that condition, ... we [the State] could possibly allow his admittance into the program." However, the prosecutor did not consider, relate, or use defendant's employment as a factor bearing upon his "amenability to correction" or "potential responsiveness to rehabilitation." Thus, the prosecutor's determination constituted a "patent and gross abuse of his discretion." *State v. Dalglish, supra,* 86 *N.J.* at 509.

It is important to bear in mind that in determining whether the standards applicable to PTI enrollment have been met, we are necessarily construing and applying the legislative scheme of pretrial intervention. *See Leonardis II, supra,* 73 *N.J.* 360. The majority contends that my position "force[s] the defendant out of PTI and into the defense of a criminal prosecution." *Ante* at 572. To the contrary, I would simply require that the prosecutor exercise his discretion in conformance with the legislative purposes underlying the PTI statutes. It is the majority which "forces" the defendant to choose between enrollment in PTI and his continued employment as a police officer based upon considerations that are entirely alien to the goals that motivate pretrial intervention programs.

---

[3]For example, the prosecutor might determine that in order to increase the prospects for successful rehabilitation it is necessary to remove defendant from a position of power and authority. I do not intimate that such a determination would be reasonable in this case, but merely offer it as an example of a conditioned enrollment which is consistent with the underlying purposes of PTI. Such a prosecutorial determination is different in kind from a condition which is imposed because the prosecutor believes that defendant's future employment as a police officer would pose a danger to the community. The latter determination is better left to those state and municipal agencies that are specifically designed to make such decisions. *See Infra* pages 581–583.

The majority states that the prosecutor's determination in this case is justifiable in order to prevent the defendant from committing a "subsequent similar offense." *Ante* at 572. However, the prosecutor's decision to condition PTI enrollment on defendant's resignation from the police force interferes with the extensive legislative machinery that exists for dealing with the discipline of police officers. The substantial case law interpreting and applying this legislation shows that it was enacted to insure public confidence in the efficiency and efficacy of the police force and to protect individual officers from arbitrary and capricious disciplinary action. To this end, the legislation contains both substantive and procedural elements.

The tenure of police officers is protected generally by New Jersey's Civil Service Law. (Title 11). The Civil Service Law prescribes the conduct that shall be considered just cause for the dismissal of police officers, and mandates specific procedures that must be followed in imposing this sanction. On the substantive side, the Civil Service Commission has promulgated regulations that list a number of activities that "shall be cause for removal ... although removals may be made for sufficient causes other than those listed." *N.J.A.C.* 4:1–16.9. Those causes specifically proscribed include: insubordination or serious breach of discipline; disorderly or immoral conduct; the conviction of any criminal act or offense; and conduct unbecoming an employee in the public service. *Id.* The decisional law construing *N.J.A.C.* 4:1–16.9 emphasizes the broad discretion accorded the appointing authority, Commission, and court in defining the proscribed causes and in penalizing violations thereof. *See, e.g., Appeal of Tuch,* 159 *N.J.Super.* 219 (App. Div.1978); *Speights v. City of New Brunswick, supra,* 1 *N.J. A.R.* 435.[4]

---

[4]Police officers are also subject to *N.J.S.A.* 2C:51–2, which provides for the automatic dismissal of public employees who are convicted of offenses implicating their employment.

In addition to its substantive elements, New Jersey's Civil Service Law mandates stringent procedures which must be followed before a police officer, state or local, can be removed from the force. *N.J.S.A.* 11:15–2. For example, Civil Service Rule 59 (1949) requires that a state police officer subject to dismissal be accorded a hearing by the appointing authority in all cases. With regard to county and municipal police officers, *N.J.S.A.* 11:22–38 states that no officer shall be removed "until he has been furnished with a written statement of the reasons for such action by the appointing authority and been allowed a reasonable time to make answer thereto."

Of greater importance are the provisions of the Civil Service Law that grant a police officer the right to have his removal reviewed by the Commission and, ultimately, the courts. *N.J.S.A.* 11:15–4 and 11:22–40; also *N.J.S.A.* 11:2A–1. If the discharged employee files an appeal within twenty days from the date of the removal, the Commission must schedule a public hearing of the case. A police officer has substantial procedural rights in such hearings. *N.J.S.A.* 11:15–4, –5 and 11:22–39. Once the hearing is completed, the Commission has broad power to dispose of the case. *N.J.S.A.* 11:15–6. The cases interpreting and applying the procedural commands of the Civil Service Law emphasize the right of a discharged police officer to a hearing before an *impartial tribunal*. *See Ferrari v. Melleby*, 134 *N.J.Super.* 583 (App.Div.1975).

In addition to the Civil Service Law—which protects government employees generally—legislation exists that is directed specifically toward the discipline of police officers.[5] These statutes provide officers subject to dismissal with meticulous procedural due process rights. *See N.J.S.A.* 40A:14–147, –148; *Ressel v. Costello*, 79 *N.J.Super.* 149, 152 (App.Div.1963). In

---

[5] *N.J.S.A.* 11:22–24 states that "[n]othing contained in [the Civil Service Law] shall alter, amend, change or affect any law of the state respecting the police ... departments in any municipality or regulating the tenure and terms of officers or employees in such departments."

order to further protect the police officer from arbitrary and unreasonable disciplinary action, this legislation emphasizes the availability of judicial review. *See N.J.S.A.* 40A:14–150; *Matter of Bruni,* 166 *N.J.Super.* 284 (App.Div.1979).

It is fair to conclude that the Legislature gave the prosecutor important discretionary authority under the PTI statute. This authority encompasses broadly the discretion to consider a host of factors bearing on eligibility for PTI. This does not, however, include the use of PTI as an extension of the penal laws. PTI is an alternative to the criminal justice system; it is not a supplement to criminal prosecution. This strongly suggests that a prosecutor may not use PTI to achieve the ends of criminal prosecution that encompass punishment and deterrence. It is within this frame of reference that the discretion of the prosecutor will permit the imposition of conditions on PTI enrollment—if they bear a rational relationship to the rehabilitation of diverted offenders. This discretion, however, does not enable a prosecutor to use PTI as a vehicle for the imposition of discipline that is otherwise vested in other governmental and regulatory entities.

## IV.

The employment of a defendant as a police officer is a relevant consideration in determining whether he is eligible for admission into PTI. It is an evidentiary circumstance potentially bearing on defendant's culpability or the gravity of the crime. If a defendant's employment substantially aggravates his guilt, then the purposes of the criminal justice system are not met by admitting defendant into PTI, even if defendant resigns his police office. If, on the other hand, a defendant's employment is *not* significantly probative of the crime committed, then it should have no bearing on his admission to PTI, except as it might relate to the rehabilitation of an offender who is not otherwise in need of criminal punishment.

In this case, the prosecutor did not consider defendant's employment as a factor bearing on his guilt or the seriousness of the crime. Further, the prosecutor did not consider defendant's employment as a factor or condition relevant to his rehabilitation. I can only conclude, therefore, that the prosecutor's determination involved an incorrect understanding and evaluation of employment as a relevant factor and was, therefore, a gross abuse of discretion. The prosecutor's determination in this case—admitting defendant to PTI upon his resignation from the police force—disserves both the criminal justice system and PTI. I would therefore reverse.

*For modification, affirmance and reversal*—Chief Justice WILENTZ and Justices CLIFFORD, POLLOCK, O'HERN, GARIBALDI and STEIN—6.

*For reversal*—Justice HANDLER—1.