287 N.J. Super. 467 (1995)
671 A.2d 211
STATE OF NEW JERSEY, PLAINTIFF,
v.
WALLACE BAYNES, DEFENDANT.
Superior Court of New Jersey, Law Division Monmouth County.
August 25, 1995.
*470 James N. Butler, Jr., for defendant (James N. Butler, Jr., Attorney at Law).
Kevin Clark, for the State (John Kaye, Monmouth County Prosecutor).

OPINION
LOCASCIO, J.S.C.
At 5:43 p.m. on September 28, 1994, while on a narcotics surveillance approximately 900 feet from the Garfield Primary School, Long Branch Police Lieutenant Albert Roma observed defendant approach a known drug dealer, Jose Morales, and hand him some money, whereupon Morales then handed defendant a small object. When defendant was arrested a short distance away, a search revealed .44 grams of heroin. Defendant was indicted for Possession of a Controlled Dangerous Substance, namely, heroin, contrary to N.J.S.A. 2C:35-10a(1) and Possession of a Controlled Dangerous Substance within 1,000 Feet of a School Zone, contrary to N.J.S.A. 2C:35-10a(1).
*471 Defendant is a 43 year old gainfully employed father of one, who has completed two years of college and supports his mother and 17 year old son. Defendant's prior record includes a 1969 juvenile adjudication for burglary for which he received a six month continuance and paid $7.50 in restitution, and a 1979 disorderly conduct conviction resulting in a $25 fine, as a result of a commotion in a movie theater during which defendant allegedly helped a friend. Following the within charge, defendant's application for Pretrial Intervention (PTI) was accepted by the director, but rejected by the prosecutor's office because, according to an April 27, 1995 memo:
The Monmouth County Prosecutor's Office has followed the legislative mandate in school zone cases and, where possible, has sought a greater degree of punishment for those charged with possessing or distributing CDS within 1,000 feet of a school. By meting out stern punishment to drug dealers and buyers operating in the Garfield Primary School school zone, the Monmouth County Prosecutor's Office hopes to reduce, and possibly eliminate the incidence of illicit CDS activity in that area and the related crime that it produces. (citations omitted).
* * * * * * * *
After considering all of the information contained in the Pre-Trial Intervention report and the police reports prepared in connection with this matter, I recommend that we reject the application of Wallace Baynes. I submit that there is a "public need" to prosecute him for his actions and a need to deter others who buy and sell drugs in the vicinity of the Garfield Primary School school zone. (citations omitted.)
On June 23, 1995, a hearing was held before this court for reconsideration of the prosecutor's decision. This court found that the prosecutor had not considered all the relevant factors and therefore, pursuant to State v. DeMarco, 107 N.J. 562, 567, 527 A.2d 417 (1987), remanded the matter to the prosecutor to reconsider defendant's application. In a June 28, 1995 memo, the prosecutor indicated that "[he] took into consideration all of the relevant information contained in the Pre-Trial [sic] Intervention report and police reports prepared in connection with Mr. Baynes' arrest," and continued to oppose defendant's diversion into PTI. Defendant now appeals the prosecutor's rejection of his PTI application.
*472 PTI is an alternative procedure to the traditional process of prosecuting criminal defendants, allowing certain offenders to receive early rehabilitative services and avoid criminal prosecution. State v. Nwobu, 139 N.J. 236, 240, 652 A.2d 1209 (1995). It is intended to augment the criminal justice system when prosecution would be ineffective, counterproductive, or unnecessary. Id. at 240-41, 652 A.2d 1209.
PTI was established, with no enabling legislation, by R. 3:28 in 1970, as authority for the vocational service pretrial intervention program, operated by the Newark Defendants Employment Project. State v. Nwobu, supra, 139 N.J. at 240-41, 652 A.2d 1209. By 1976 the Court had approved programs for twelve counties. Pressler, Current N.J. Court Rules, comment 1 on R. 3:28 (1995). Subsequently, the Legislature enacted a statewide program of pretrial intervention as part of the 1979 Code of Criminal Justice, N.J.S.A. 2C:43-12 to -22, which generally mirrored the procedures and guidelines previously established under R. 3:28. Although pretrial diversion is, by its nature, part of the prosecutor's charging function, the statutes, procedures, and guidelines involve the judiciary in its administration. State v. Nwobu, supra, 139 N.J. at 240-41, 652 A.2d 1209. As a practical matter, criminal case management today is a three part effort involving prosecutors, defenders and the courts. Id. Judicial powers obviously "include the power to review the operation of court initiated procedures and to review the legal determinations made pursuant to these procedures." State v. Leonardis, 71 N.J. 85, 109, 363 A.2d 321 (1976).
Under current practice, admission into PTI is based upon a recommendation by the criminal division manager, with the consent of the prosecutor. R. 3:28(b). The standards for review of PTI decisions are firmly established by the court:
[The PTI] decision lies, in the first instance, with the prosecutor, and once he has determined that he will not consent to the diversion of a particular defendant, his decision is to be afforded great deference. In fact, the level of deference which is required is so high that it has been categorized as "enhanced deference" or "extra deference." ... [T]he scope of any review in this area is to be "severely limited." *473 * * * Thus, judicial review, in actuality, exists "to check only the most egregious examples of injustice and unfairness."
* * * * * * * *
The extreme deference which a prosecutor's decision is entitled to in this context translates into a heavy burden which must be borne by a defendant when seeking to overcome a prosecutorial veto of his admission into PTI. Specifically, "a defendant must `clearly and convincingly establish that the prosecutor's refusal to sanction admission into [a PTI] program was based on a patent and gross abuse of his discretion' before a court [can] suspend criminal proceedings under R. 3:28 without prosecutorial consent." (emphasis added).
[State v. Kraft, 265 N.J. Super. 106, 111-12, 625 A.2d 579 (1993) (citations omitted).]
A "patent and gross abuse of discretion" has been defined as follows:
Ordinarily an abuse of discretion will be manifest if defendant can show that a prosecutorial veto (a) was not premised upon a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgment. In order for such an abuse of discretion to rise to the level of "patent and gross," it must be further shown that the prosecutorial error complained of will clearly subvert the goals underlying Pretrial Intervention. [State v. Bender, 80 N.J. 84, 93, 402 A.2d 217 (1979).]
Additionally, if a prosecutor fails to consider all relevant factors or considers irrelevant factors, a court may remand the matter for further consideration. State v. DeMarco, 107 N.J. 562, 567, 527 A.2d 417 (1987). If a prosecutor commits a clear error of judgment, a court may order that a defendant be enrolled in PTI. Id.

To err or not to err, that is the question.
The New Jersey Supreme Court promulgated Guidelines for the operation of Pretrial Intervention which provides courts and prosecutors with criteria for making decisions regarding PTI. R. 3:28. Guidelines 1 and 2 are relevant in this case.
Guideline 2 provides that "[a]ny defendant accused of a crime shall be eligible for admission into a PTI program." A defendant is also given the opportunity to present "any facts or materials demonstrating [his] amenability to the rehabilitative process, showing compelling reasons for justifying the defendant's admission, *474 and establishing that a decision against enrollment would be arbitrary and unreasonable."
Guideline 1 enumerates the purposes served by PTI:
1. to enable defendants to avoid ordinary prosecution by receiving early rehabilitative services expected to deter future criminal behavior;
2. to provide defendants who might be harmed by the imposition of criminal sanctions with an alternative to prosecution expected to deter criminal conduct;
3. to avoid burdensome prosecutions for "victimless" offenses;
4. to relieve overburdened criminal calendars so that resources can be expended on more serious criminal matters; and
5. to deter future criminal behavior of PTI participants.
Courts have emphasized the importance of a statement of reasons accompanying any PTI decision by either a judge, prosecutor or director, State v. Leonardis, supra, 71 N.J. at 114-15, 363 A.2d 321, because such a statement facilitates effective judicial review, assists in evaluating the success of the PTI program, affords defendant the opportunity to prepare a response, and dispels the suspicions of arbitrariness. Id.
However, the statement of reasons may not merely parrot the language of the relevant statutes, rules, and guidelines. State v. Sutton, 80 N.J. 110, 117, 402 A.2d 230 (1979). At a minimum, the prosecutor "should note the factors present in defendant's background or the offense purportedly committed which led [the prosecutor] to conclude that admission should be denied." Id. Additionally, such statements should not be vague, but rather, should be stated with "sufficient specificity so that defendant has a meaningful opportunity to demonstrate that they are unfounded." State v. Maddocks, 80 N.J. 98, 109, 402 A.2d 224 (1979).
A reviewing court must assume, absent evidence to the contrary, that the prosecutor's office has considered all relevant factors in reaching the PTI decision. See State v. Dalglish, 86 N.J. 503, 509, 432 A.2d 74 (1981). However, error can be found where the prosecutor's decision was based "on appropriate factors and rationally explained," but "is contrary to the predominant *475 views of others responsible for the administration of criminal justice." Id. at 510, 432 A.2d 74. Moreover, although a reviewing court "does not have the authority in PTI matters to substitute [its own] discretion for that of the prosecutor," State v. Kraft, supra, 265 N.J. Super. at 112, 625 A.2d 579, when an error in applying the guidelines to the facts of the case are "clearly unreasonable so as to shock the judicial conscience," it may be branded a clear error of judgment and "could not have reasonably been made upon a weighing of the relevant factors." State v. Roth, 95 N.J. 334, 365-66, 471 A.2d 370 (1984).
Such a case exists here. Defendant is an employed father who has completed two years of college at Rutgers University and has been gainfully employed throughout his life, the last nine years with the same employer. Defendant resides with and supports his mother and his 17 year old son. The arrest in this case took place at 5:43 p.m., when school was not in session. The heroin found on defendant, .44 grams, was not a large amount, and according to defendant, was for his own personal use. Defendant's juvenile record includes only a 25 year old larceny charge for which defendant received a six month continuance and paid $7.50 restitution. Defendant's adult criminal history includes only a 15 year old disorderly conduct conviction resulting in a $25 fine, as a result of a commotion in a movie theater during which defendant allegedly helped a friend. Further, the arresting officer, herein, does not oppose defendant's admittance into PTI.
Even giving the prosecutor's decision in this case the "enhanced deference" to which it is entitled, State v. Kraft, supra, 265 N.J. Super. at 111-12, 625 A.2d 579, the decision constitutes a gross and patent abuse of discretion because it is so clearly unreasonable that it shocks the judicial conscience, subverts the goals of PTI, and constitutes a clear error of judgment because it could not have reasonably been made upon a fair weighing of all relevant factors. State v. Roth, supra, 95 N.J. at 365-66, 471 A.2d 370.
*476 Defendant's admission into PTI would help fulfill the five purposes of PTI as outlined in Guideline 1. Defendant would receive early rehabilitative service that would deter future criminal behavior. Defendant's juvenile record includes only a 25 year old larceny charge for which defendant received a six month continuance and $7.50 restitution. Defendant's adult criminal history includes only a minor 15 year old disorderly conduct conviction. Further, the arresting officer in this case does not oppose defendant's admittance into PTI. With proper supervision and counselling, as provided by the PTI program, defendant would clearly be deterred from future criminal behavior.
Second, defendant would not have to be harmed by criminal sanctions but instead be given an alternative to prosecution expected to deter criminal conduct. Defendant is an employed father who has completed two years of college at Rutgers University and has been gainfully employed throughout his life, the last nine years with the same employer. Defendant resides with and supports his mother and his 17 year old son. Defendant therefore deserves an alternative to prosecution.
Third, Monmouth County would not be burdened by the prosecution of a victimless offense  no one was injured or corrupted by defendant's actions in this case. The arrest in this case took place at 5:43 p.m. when school was not in session. The heroin found on defendant, .44 grams, was not a large amount, and according to defendant, was for his own personal use.
Fourth, the criminal calendar would be relieved if defendant were in PTI and resources that would have to be utilized in his prosecution could be directed to other more serious criminal matters. Since the arresting officer does not oppose defendant's admission into PTI, he could channel his own time to other investigations, instead of waiting to appear in court for the trial of defendant's victimless crime.
Fifth, defendant's admission would deter future criminal behavior of PTI participants. Defendant appears to assume responsibility by obtaining and keeping a job and taking care of his son and *477 mother. PTI supervision would provide the necessary counselling defendant may need to continue such efforts.
Additionally, it cannot be said, as alleged in the State's April 27, 1995 memo, that defendant's rejection by the Monmouth County Prosecutor's Office furthers a consistent policy of rejecting all school zone cases and thus sends a message to the community that it is following the "legislative mandate" establishing such zones. Indeed, it was brought out, during the oral argument herein, that in a prior case where a defendant was charged not only with Possession of CDS within 1,000 Feet of a School Zone (as in the within matter), but also with Possession of a CDS with Intent to Distribute within 1,000 Feet of a School Zone, defendant, in the prior case, was accepted into PTI by the Monmouth County Prosecutor's Office. In view of this prior precedent, it appears that the policy enunciated by the Monmouth County Prosecutor's Office concerning "stern punishment" for school zone offenses is not consistently followed and therefore should not be relied upon to deny this otherwise qualified defendant the privilege of participating in PTI.
For the aforesaid reasons this court finds that the prosecutor's decision, in the within matter, to deny defendant's admission into PTI, constitutes a clear error of judgment, State v. DeMarco, supra, and therefore it is hereby ordered that defendant be admitted into PTI.