STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v.
LAWRENCE DALGLISH, DEFENDANT-RESPONDENT.

Argued May 5, 1981—Decided July 7, 1981.

504

*John S. Redden*, Assistant Essex County Prosecutor, argued the cause for appellant (*James R. Zazzali*, Attorney General of New Jersey, attorney; *George L. Schneider*, Essex County Prosecutor, of counsel).

*Stanley J. Hausman* argued the cause for respondent.

*James B. Daniels*, Assistant Deputy Public Defender, argued the cause for *amicus curiae* Office of the Public Defender (*Stanley C. Van Ness*, Public Defender, attorney).

The opinion of the Court was delivered by

PASHMAN, J.

■ In *State v. Leonardis*, 73 *N.J.* 360 (1977) (*Leonardis II*), this Court enunciated the standard of review of prosecutorial decisions denying admission into pretrial intervention (PTI) programs created under *R.* 3:28. We held that a defendant must "clearly and convincingly establish that the prosecutor's refusal to sanction admission into the program was based on a patent and gross abuse of his discretion" before a court may order his enrollment in a PTI program without prosecutorial consent. *Id.* at 382. Subsequently the Legislature enacted a statewide program of pretrial intervention as part of the Code of Criminal Justice. *See N.J.S.A.* 2C:43–12 to –22. The Code essentially adopted the guidelines and procedures previously followed under *R.* 3:28, but is silent as to the standard of review of prosecutorial decisions. In this case, we must decide whether the standard of review set forth in *Leonardis II* governs review of prosecutorial decisions under the statutory program of pretrial intervention. We hold that it does, at least when a defendant seeks enrollment in PTI without the consent of the prosecutor.

I

Defendant is a licensed medical doctor who has practiced in this State for over 20 years. Prior to the events in this case, he had never been accused of a crime or otherwise involved in criminal matters.

The indictment against defendant grew out of a marital dispute. Defendant suspected his wife of adultery. To verify his suspicions, defendant allegedly placed an illegal wiretap on the telephone of their marital home sometime in the late spring of 1979. After he confronted his wife with the fact that he had

tapped their telephone and heard her conversations with her alleged lover, marital relations worsened. Finally, in July 1979 defendant's wife locked him out of their home and filed a complaint seeking divorce on the ground of extreme cruelty. Defendant counterclaimed for divorce on the ground of adultery.

Defendant admits that he continued to record his wife's conversations until the judge in the matrimonial action ordered him to cease and desist in late 1979. He contends that he never intended to use the information for a criminal purpose such as to coerce his wife to accept a favorable divorce settlement or to engage in sexual acts as the State claims. Instead, he wanted only to end his wife's adulterous relationship and to be able to refute the lies he claims his wife was going to present in the divorce action.

In February 1980 defendant's wife went to the police and complained about the wiretap. On March 25, 1980, the day after the parties were granted a divorce in accordance with a settlement, the Essex County grand jury handed down a six-count indictment charging defendant with unlawful interception, use, and disclosure of a wire or oral communication, *N.J.S.A.* 2A:156A–3(a), (b), (c), possession of an interception device, *N.J. S.A.* 2A:156A–5(a), and criminal coercion, *N.J.S.A.* 2C:13–5. Defendant then applied for enrollment in the Essex County Pretrial Intervention program. The program director rejected the application, offering the following explanation in his letter to defendant:

> The alleged offense you are charged with continued for an extended period of time and contains many complicated issues. The value of Pretrial Intervention is outweighed by the public need for the judicial process to continue.

After defendant filed a motion seeking review of this decision, the county prosecutor also informed him that his application was being rejected for the following reasons:

> This offense, which continued for an extended period of time, was a blatant violation of [your ex-wife's] basic Constitutional rights, and the value of Pretrial Intervention is outweighed by the public need for prosecution.

In light of the above circumstances, your acceptance into the Pretrial Intervention Program would deprecate the seriousness of this offense. Accordingly, the Essex County Prosecutor's Office has determined that your admission to the program would not facilitate the goals of Pretrial Intervention.

After hearing testimony on the motion, the trial court found that the prosecutor had abused his discretion in denying consent for defendant's participation in the PTI program. In its unreported written opinion, the court held that the strict standard of review of prosecutorial decisions adopted in *Leonardis II* no longer applied after enactment of PTI in the Code of Criminal Justice. Instead, the court applied an ordinary "abuse of discretion" standard of review to the prosecutor's denial of defendant's PTI application. Finding that defendant's alleged crimes arose out of the "extenuating circumstances" of the marital dispute and that defendant is amenable to correction and rehabilitation, the judge held that the prosecutor's decision was arbitrary and capricious because it was not based on all the relevant factors. Consequently, he ordered that defendant must be admitted to the PTI program.

While the State's appeal was pending before the Appellate Division, we certified the case directly on our own motion. 87 *N.J.* 321 (1981). We now reverse and remand for reconsideration in light of the proper standard of review.

II

We have previously described the history and underlying goals of PTI in New Jersey. *See, e. g., State v. Leonardis,* 71 *N.J.* 85, 92–107 (1976) (*Leonardis I*). The sole question presented in this case is whether the standard set forth in *Leonardis II* for reviewing a prosecutor's refusal to consent to a defendant's admission into a PTI program is still appropriate in light of the statutory recognition of PTI in the Code of Criminal Justice, *N.J.S.A.* 2C:43–12. Resolution of this issue requires a brief summary of the standards enunciated in *Leonardis II* and refined in later cases, *see State v. Sutton,* 80 *N.J.* 110 (1979); *State v. Maddocks,* 80 *N.J.* 98 (1979); *State v. Bender,* 80 *N.J.* 84 (1979).

■ We held in *Leonardis II* that a defendant must "clearly and convincingly establish that the prosecutor's refusal to sanction admission into [a PTI] program was based on *a patent and gross abuse of his discretion*" before a court could suspend criminal proceedings under *R.* 3:28 without prosecutorial consent. 73 *N.J.* at 382 (emphasis added). We subsequently defined what constitutes a patent and gross abuse of discretion in *State v. Bender, supra*:

> Ordinarily, an *abuse of discretion* will be manifest if defendant can show that a prosecutorial veto (a) was not premised upon a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgment. . . . In order for such an abuse of discretion to rise to the level of *"patent and gross,"* it must further be shown that the prosecutorial error complained of will clearly subvert the goals underlying Pretrial Intervention. [80 *N.J.* at 93 (citations omitted) (emphasis added)]

In reviewing a prosecutor's denial of consent, a court's scrutiny normally is limited to the reasons given by the prosecutor for his action. *Id.* at 94. Absent evidence to the contrary, it is presumed that the prosecutor considered all relevant factors before rendering a decision. *Id.*

■ The need to preserve prosecutorial discretion in deciding whether to divert a particular defendant from the ordinary criminal process motivated our choice of the applicable standard of review. We emphasized prosecutorial discretion in *Leonardis II* both out of deference to the fundamental responsibility of prosecutors for deciding whom to prosecute, and because a primary purpose of PTI is to augment, not to diminish, a prosecutor's options. 73 *N.J.* at 381.

■ Although a court may not order the enrollment of a defendant in PTI unless he has demonstrated a patent and gross abuse of discretion by the prosecutor, we have recognized that a remand to the prosecutor may be appropriate without such a showing in certain cases. *See State v. Bender, supra*, 80 *N.J.* at 94. These are cases where a court finds that the prosecutor's decision was arbitrary, irrational, or otherwise an abuse of discretion, but not a patent and gross abuse, and also determines that a remand will serve a useful purpose. A remand might be

proper, for example, where "the prosecutorial decision was based upon a consideration of inappropriate factors or not premised upon a consideration of all relevant factors," *id.*; where the denial resulted from an incorrect evaluation of relevant factors, *id.* at 97; where the prosecutor's belief that a particular factor is or is not present was unfounded or based upon unreliable information, *see State v. Maddocks, supra,* 80 *N.J.* at 108; or where the prosecutor's statement of reasons is inadequate, *see State v. Sutton, supra,* 80 *N.J.* at 116–17, either because it lacks the necessary specificity or because it fails to give a rational explanation of the result. These instances raise issues akin to questions of law, concerning which courts should exercise independent judgment in fulfilling their responsibility to maintain the integrity and proper functioning of PTI as a whole. *See State v. Maddocks, supra,* 80 *N.J.* at 104–05. Once a court has given a definitive interpretation of the factors to be considered or has ruled on the adequacy of the procedures followed or explanation given for the prosecutor's decision, a remand is appropriate because it affords the prosecutor an opportunity to reconsider his decision in light of the court's opinion.

In some cases, on the other hand, a remand will serve no useful purpose. One instance is when a court determines that a prosecutor's denial of a defendant's application was a "clear error of judgment," in the sense that, although based on appropriate factors and rationally explained, it is contrary to the predominant views of others responsible for the administration of criminal justice. A remand in such a case would be inappropriate if the prosecutor is unlikely to reconsider his position. *See State v. Bender, supra,* 80 *N.J.* at 94. If a remand is inappropriate, a court should not give an order suspending charges and enrolling a defendant in PTI in spite of the lack of prosecutorial consent unless there was patent and gross abuse of discretion that would undermine the goals of PTI. Individual PTI applications turn on an assessment of the defendant's background, the circumstances of his crime, the likely value of supervisory treatment, and the prosecutor's current enforcement

policy. These are factual and policy determinations whose resolution belongs primarily to the prosecutor, not the judiciary.

## III

A year after the decision in *Leonardis II*, the Legislature adopted the New Jersey Code of Criminal Justice. *L.* 1978, *c.* 95. The Code established a program for supervisory treatment substantially the same as the PTI program that was already in operation under *R.* 3:28. *See N.J.S.A.* 2C:43–12 to –13. It provides for judicial review of prosecutorial decisions refusing to consent to enrollment of criminal defendants in a PTI program, *N.J.S.A.* 2C:43–12(f), but does not specify the standard of review.

The legislative history is silent on this subject. The bill originally introduced in the Assembly did not provide for any judicial review. Assembly Bill 642, § 2C:43–12 (1976). The provisions in sections 12(d) and 12(f) for judicial review appeared in the 1978 enactment and were not revised in the 1979 act, *L.* 1979, *c.* 178, § 88. In its analysis of the section after enactment, the Division of Criminal Justice remarked that the "Code does not state a standard of review of a prosecutor's denial and in the absence thereof, it is assumed that the standard established in *State v. Leonardis*, 73 *N.J.* 360 (1977), would prevail." Division of Criminal Justice, Appellate Section, *Analysis of the Procedural and Sentencing Provisions of the New Jersey Penal Code and a Review of the Major Substantive Offenses*, 6 *Crim.Just.Q.* 124, 164 (1978). We share this conclusion.

The Public Defender, participating as an *amicus curiae*, argues that the ordinary standard for reviewing prosecutorial discretion on matters other than PTI at the time of the Code's enactment was the arbitrary and capricious standard and that we should assume the Legislature intended that standard would apply to PTI decisions as well. The Public Defender's basic premise is unfounded. It is true that cases decided before

*Leonardis II* recognized that a prosecutor's decision whether to proceed with investigation or prosecution in a particular case is "not unregulated or absolute," *State v. Winne,* 12 *N.J.* 152, 172 (1953), and that a court should not interfere with his determination absent a showing of arbitrariness or abuse, *see In re Investigation Regarding Ringwood Fact Finding Committee,* 65 *N.J.* 512, 517–18 (1974); *State v. LeVien,* 44 *N.J.* 323, 327 (1965). Although these decisions referred to "abuse of discretion," they did not purport to formulate the precise standard applicable to prosecutorial discretion. Nor did they distinguish between the standard appropriate for ordering prosecutorial action and the standard for remand to the prosecutor. They were instead concerned with the question of whether there should be judicial review at all in light of the traditional separation-of-powers doctrine that there is no review of prosecutorial discretion. *E. g., Ringwood, supra,* 65 *N.J.* at 516–17. The only case decided prior to the adoption of the Code addressing the proper standard for directing a prosecutor to take specific action within his sphere of discretion is *Leonardis II.*

■ Moreover, at the time the Code was adopted, the standard of "patent and gross" abuse of discretion for judicial review of prosecutorial decisions concerning PTI was firmly established in the case law. *See Leonardis II, supra; State v. Barrett,* 157 *N.J.Super* 96, 101 (App.Div.1978); *State v. Markt,* 156 *N.J.Super.* 486, 491 (App.Div.1978); *State v. Litton,* 155 *N.J.Super.* 207, 212 (App.Div.1977). In the absence of a clear manifestation to the contrary, we shall not impute to the Legislature an intention to change established law. *See, e. g., Elberon Bathing Co. v. Ambassador Insurance Co.,* 77 *N.J.* 1, 18 (1978). *See also N.J.S.A.* 2C:1–1(e).

The court below believed that the policy reasons supporting the standard adopted in *Leonardis II* were no longer present after enactment of the Code. Furthermore, it reasoned that since courts now review prosecutorial compliance with legislative standards for PTI, the conventional arbitrary and capricious

standard of administrative law is appropriate, *see, e. g., Henry v. Rahway State Prison,* 81 *N.J.* 571, 580 (1980), and is the only meaningful way to ensure fair and even-handed administration of PTI. The court reasoned as follows:

> [T]he rationale which required a showing of "patent and gross" abuse of discretion, no longer exists. Rather, the court is now exercising a power expressly mandated by the Legislative Branch of Government and consideration must be given to the expectations of that legislature. Under such circumstances the conventional concept of judicial review of governmental action for arbitrariness, existing at the time of the enactment of the said Code, must be presumed to have been intended by the Legislature to be applicable to that Code.
>
> In reference to such conventional concepts of judicial review of governmental action, it is universally recognized that as part of the court's responsibility to ensure fundamental fairness, it will root out all arbitrary and unreasonable governmental action.

█ Contrary to the trial court's assertion, the concern over separation of powers that motivated our decision in *Leonardis II* remains valid even after the passage of a statutory PTI program. As we stated in *Leonardis II, supra,* 73 *N.J.* at 381, judicial review of a prosecutor's decision whether or not to suspend criminal charges infringes on both the Legislature's power to define crimes and the Executive's responsibility to enforce the laws and therefore must be performed with sensitivity. Since the Legislature has established a PTI program with judicial review, the trial court correctly concluded that the problem of judicial interference with legislative authority has been eliminated. Nevertheless, our concern about unwarranted interference with prosecutorial prerogative persists as a reason for requiring that a trial court find a patent abuse of discretion before ordering enrollment in a PTI program without prosecutorial consent.[1]

---

[1] We reject the argument, advanced by the Public Defender as *amicus curiae,* that the requirement of prosecutorial consent in *N.J.S.A.* 2C:43–12(e) "infringes upon the exclusive power of the judiciary to fashion remedies and to impose sentences in violation of the separation of powers doctrine." Although we have not previously ruled on this question, the position of the Public Defender is contrary to the tenor of our decisions in *Leonardis I* and *II.* While we may have characterized the decision to divert as a "quasi-judicial"

Retention of the *Leonardis II* standard does not mean, as the trial court presumed, that arbitrary and capricious action on the part of prosecutors not amounting to a patent and gross abuse of discretion will go unchecked. As discussed in the previous section, we stated in *Bender* that a trial court should remand an application to the prosecutor if it finds that the prosecutor's denial of the application was an abuse of his discretion, even if the abuse was not patent and gross. *See Bender, supra,* 80 *N.J.* at 94. Because a remand interferes less with prosecutorial authority than does an order suspending prosecution, this procedure does not raise the same concerns about the separation of powers that necessitated a narrower standard of review in *Leonardis II. Cf. Dunlop v. Bachowski,* 421 *U.S.* 560, 575 & n.12, 95 *S.Ct.* 1851, 1861 & n.12, 44 *L.Ed.2d* 377 (1975) (preferable course when trial court finds that decision not to bring suit was arbitrary and capricious is to remand, because an order to initiate suit would raise separation of powers problems). By remanding upon finding an abuse of discretion, courts can assure prosecutorial compliance with procedural guidelines and observance of the legislative standards for PTI and protect defendants against arbitrary and irrational decisionmaking without supplanting the prosecutor's primacy in determining whether PTI is appropriate in individual cases.

Because the trial court in this case ordered that the defendant be enrolled in a PTI program based only on a finding that the prosecutor's refusal to consent was an abuse of discretion, we remand to the trial court. If the court determines that the prosecutor's rejection of defendant's PTI application was a patent and gross abuse of discretion, it should order the enroll-

---

function, *Leonardis II, supra,* 73 *N.J.* at 376; *Leonardis I, supra,* 71 *N.J.* at 115–16, and PTI as "a remedial aspect of a criminal proceeding," we also recognized that the decision to divert is an aspect of the prosecutor's charging function as well, *Leonardis II,* 73 *N.J.* at 378–80; *Leonardis I,* 71 *N.J.* at 96–97. Because we understood that diversion partakes of both traditional prosecutorial and judicial functions, we gave extra deference to prosecutorial decisions in *Leonardis II.* We see no reason to change this view.

ment of defendant in a PTI program. If the court concludes that there was not a patent and gross abuse of discretion, the court should then consider whether the prosecutor's denial of consent was arbitrary, irrational or based on a misinterpretation of PTI procedures or guidelines. In that event, under the rules set forth in this opinion, *supra* at 509–510, 511; and *Bender, supra*, 80 *N.J.* at 94, a remand to the prosecutor for reconsideration of his decision might be warranted.

For the reasons stated above, the judgment of the trial court is reversed and the case is remanded for further proceedings consistent with this opinion.

*For reversal and remandment* —Chief Justice WILENTZ and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER, HANDLER and POLLOCK—7.

*For affirmance* —None.