# **RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5737-14T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

BRIDGETTE N. ARCHUT,

    Defendant-Appellant.

_____

Submitted March 29, 2017 — Decided May 23, 2017

Before Judges Accurso and Lisa.

On appeal from Superior Court of New Jersey,
Law Division, Camden County, Indictment No.
13-11-3428.

Joseph E. Krakora, Public Defender, attorney
for appellant (Michele A. Adubato, Designated
Counsel, on the brief).

Mary Eva Colalillo, Camden County Prosecutor,
attorney for respondent (Linda A. Shashoua,
Assistant Prosecutor, of counsel and on the
brief).

PER CURIAM

Defendant was charged in a two-count indictment with fourth-degree bias intimidation, N.J.S.A. 2C:16-1a, based on committing

the petty disorderly persons offense of harassment, N.J.S.A. 2C:33-4 (Count One), and fourth-degree bias intimidation, N.J.S.A. 2C:16-1a, based on committing the disorderly persons offense of simple assault, N.J.S.A. 2C:12-1a (Count Two). Defendant's motion to dismiss the indictment was denied. Her application for admission to the Pretrial Intervention (PTI) program was denied, and her appeal of that decision to the Law Division was also denied.

Defendant went to trial and the jury found her guilty on Count One of harassment, but not guilty of bias intimidation. On Count Two, the jury found her guilty of simple assault and bias intimidation. Defendant's post-trial motion for a judgment of acquittal notwithstanding the verdict or, alternatively, a new trial, was denied.

The court sentenced defendant on Count One to a one-year probationary term. On Count Two, defendant was sentenced for simple assault to probation for one year and for bias intimidation to two years' probation, concurrent to each other but consecutive to the sentence imposed on Count One. The court also imposed all mandatory penalties as well as an order for restitution to compensate the victim for expenses incurred for counseling.

On appeal, defendant presents the following arguments:

POINT I

THE PRESENTATION TO THE GRAND JURY WAS INSUFFICIENT TO SUPPORT THE INDICTMENT AGAINST DEFENDANT AND SHOULD HAVE BEEN DISMISSED ON DEFENDANT'S MOTION.

POINT II

IT WAS A PATENT AND GROSS ABUSE OF DISCRETION FOR THE DEFENDANT TO BE DENIED ENTRY INTO THE PRE-TRIAL INTERVENTION PROGRAM.

POINT III

THE COURT'S REFUSAL TO ASK THE VOIR DIRE QUESTION REQUESTED BY THE DEFENSE WAS ERROR.

POINT IV

THE DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL AND NEW TRIAL SHOULD HAVE BEEN GRANTED.

POINT V

BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT A VERDICT OF BIAS INTIMIDATION BEYOND A REASONABLE DOUBT, THE GUILTY VERDICT MUST BE VACATED.

POINT VI

THE THREE[-]YEAR TERM OF PROBATION FOR A CONVICTION FOR THE PETTY DISORDERLY PERSONS OFFENSE OF HARASSMENT AND ONE COUNT OF BIAS INTIMIDATION BOTH OCCURING AT THE SAME TIME AND PLACE WAS EXCESSIVE AND SHOULD BE MODIFIED AND REDUCED.  (Not raised below).

We reject Points I through V and affirm the convictions.  We agree with Point VI, and modify defendant's sentence.

3

I.

These are the facts adduced at trial. On the evening of June 9, 2013, twelve-year-old C.B. and his seventeen-year-old brother F.B., together with two girls who were F.B's friends, seventeen-year-old K.E. and K.G. (whose age is not disclosed by the record) were riding bicycles in a county park located in their hometown of Haddon Heights Township. C.B. and F.B. are African-American; the two girls accompanying them are Caucasian.

At that time, defendant, eighteen-year-old Bridgette N. Archut, was a passenger in a car with four other young people. All of the occupants are Caucasian. They were driving around the same area as the bicyclists, and were looking for something to do. Defendant was seated in the middle of the rear seat, with passengers on both sides of her, and the two front seats were occupied.

The car occupied by defendant came upon three of the teenagers, namely the two brothers and one of the girls. At that particular moment, the other girl had become slightly separated from the group. As they rode by, the rear seat passenger to defendant's left, A.P., a thirteen-year-old girl, yelled out a racial slur, referring to a little N_ _ _ _ _. It was obvious to the bicyclists that this slur was directed at twelve-year-old C.B., who at that time was a sixth grader and was approximately

four feet six inches in height. As C.B. described it in his testimony, "[S]omeone screamed at me that I was a little N_ _ _ _ _." He explained that the slur was obviously directed at him: "I was the only one around and I was, I guess I was the black person and I was the only little kid that was at the park at the time." C.B. explained his immediate feeling when this occurred: "I feel like they're trying to degrade me and I felt bad about myself and I thought they tried to take my right away as like being a person."

C.B.'s older brother, F.B., chased after the car on his bicycle. He was unable to catch up with the car, and, because of this action, he became separated from the other bicyclists in his group. Meanwhile, inside the car, the rear-seat passengers were all laughing about the incident. In her subsequent statement to the police, which was introduced in evidence at trial, defendant said that after the slur, "[e]veryone was laughing." At trial, she denied that she was laughing.

The driver of the car testified at trial that all of the back seat occupants, specifically including defendant, were urging her to circle around and "go back, go back, go back." When asked whether defendant was one of the people saying that, the witness answered in the affirmative. The driver did circle around and return to where the bicyclists had been, arriving at that location

5

about four or five minutes after the slur had been made. By this time, the girl who had been separated from the group had caught up with the other girl and C.B. F.B. remained separated from the group because of his unsuccessful pursuit of the car. Therefore, the car came upon a group consisting of twelve-year-old C.B. and the two older Caucasian girls.

K.E. testified that the car was proceeding "pretty fast," but did not estimate an actual speed. As they rode by the group, defendant threw a cup containing ice and water, secured by a lid, out of the window. It hit the pavement two feet from C.B. and "exploded." Some of the ice hit C.B.'s foot. C.B. explained his reaction: "I was scared. I felt like I was being attacked." He believed the projectile was directed at him because "it was close to [him] and [the two girls] were ahead of me a little bit."

After this object was thrown, the car drove off to a parking lot in the park, where it remained. C.B.'s older brother called the police after rejoining his friends and C.B. The police located the car and took defendant and others to the police station for statements. Defendant initially denied that any racial slur was made or that she or anyone else threw anything out of the window. But she eventually admitted that the slur was made and that the car made a second pass at the group, at which time she threw the cup out of the window. She denied that she was throwing the cup

6

at anyone, saying that her reason for throwing it out was that "[w]e didn't need it."

## II.

Defendant's arguments in Points I and III lack sufficient merit to warrant extended discussion in a written opinion. R. 2:11-3(e)(2). We make these brief comments.

Defendant argues that her motion to dismiss the indictment should have been granted because the evidence presented to the grand jury was insufficient to support the charges in the indictment. The State's evidentiary obligation in the indictment process is to produce "'some evidence' as to each element of a prima facie case." State v. Vasky, 218 N.J. Super. 487, 491 (App. Div. 1987) (citation omitted). To this end, "every reasonable inference is to be given to the State." State v. N.J. Trade Waste Ass'n, 96 N.J. 8, 27 (1984). The judicial authority to dismiss an indictment may not be exercised except on the "clearest and plainest ground." State v. Weleck, 10 N.J. 355, 364 (1952) (quoting State v. Davidson, 116 N.J.L. 325, 328 (Sup. Ct. 1936)). A reviewing court will set aside a trial court's decision on whether to dismiss an indictment only upon an abuse of discretion. State v. Warmbrun, 277 N.J. Super. 51, 59-60 (App. Div. 1994), certif. denied, 140 N.J. 277 (1995).

We have reviewed the grand jury transcript. The State produced as its only witness a detective from the Camden County Prosecutor's Office who was involved in the investigation of this matter. She described the events substantially as we have described them above. We are satisfied that this presentation complied with the required evidential standard, presenting at least some evidence as to each element of each offense.

In Point III, defendant argues that the trial court erred in failing to ask prospective jurors the following question, which defendant requested: "Have you, or members of your family or friends ever been the victim of a hate crime? (i.e. a crime based on race, ethnicity, or sexuality)?" The judge declined the request, concluding that other standard questions and instructions to jurors, together with a description of the crime and reading of the indictment, adequately covered the subject.

Trial courts are granted broad discretionary authority in conducting jury voir dire. State v. Papasavvas, 163 N.J. 565, 595 (2000). A reviewing court "should focus only on determining whether 'the overall scope and quality of the voir dire was sufficiently thorough and probing to assure the selection of an impartial jury.'" State v. Winder, 200 N.J. 231, 252 (2009) (quoting State v. Biegenwald, 106 N.J. 13, 29 (1987)). We are satisfied from our review of the record that the voir dire process

A-5737-14T3

was thorough and adequately addressed potential juror bias relating to the nature of these bias intimidation charges. The trial judge did not abuse his discretion in refusing to ask the supplemental question proposed by the defense.

### III.

We next consider defendant's argument in Point II that the trial court erred in failing to find that the prosecutor committed a gross and patent abuse of discretion in denying her PTI application. Defendant argues that she should have been admitted to PTI "[b]ased on the facts of this case and defendant's unblemished prior history."

PTI determinations are guided by the seventeen factors listed under N.J.S.A. 2C:43-12(e), and by the Guidelines for Operation of Pretrial Intervention in New Jersey, Pressler & Verniero, Current N.J. Court Rules, Guidelines to R. 3:28 (2017). Defendant's application was reviewed by the Criminal Division Manager's Office, after which Senior Probation Officer Erica K. Wade issued a denial letter on February 6, 2014.

Denial was based on Guideline 3(i)(3), which provides that if the crime was "deliberately committed with violence or threat of violence against another person . . . the defendant's application should generally be rejected." Wade went on to describe the factual circumstances and concluded that "[t]his

9

behavior by the defendant was clearly committed with deliberate violence towards the victims and injurious consequences which falls within Guideline 3(i)(3)." Wade further cited N.J.S.A. 2C:43-12(e)(1), (2), (7) and (14), which "require[] consideration of the nature of the offense, needs and interests of the victim and society and whether or not the crime is of such a nature that the value of supervisory treatment would be outweighed by the public need for prosecution." Finally, she relied on N.J.S.A. 2C:43-12(e)(10), requiring "consideration of whether or not the crime is of an assaultive or violent nature[,] whether in the criminal act itself or in the possible injurious consequences of such behavior."

Wade concluded, upon consideration of the materials submitted by defendant, including her age of nineteen at the time of application, that "[d]espite these considerations and in view of Ms. Archut's actions and behavior towards the victims, it is my opinion that she is not a suitable risk or candidate for PTI. The application is denied."

The prosecutor agreed with the Criminal Division Manager's assessment and joined in the denial. Defendant appealed to the Law Division. After hearing oral argument, the court found that the prosecutor had not clearly and convincingly committed a gross and patent abuse of discretion in denying the application.

10

The court noted that the racial slur constituted "reprehensible conduct," which, in the fact pattern presented, was adopted by defendant when she threw the cup full of ice and water at the victim as part of the continuing episode. The court said "that's what the need for prosecution is versus supervisory treatment, to send a strong message that this type of conduct will not be tolerated in the future." The court was further satisfied that defendant's conduct was indeed assaultive conduct and that the presumption against PTI enrollment for such conduct was not overcome. Recognizing the very high deference afforded to prosecutors in PTI determinations, the judge denied defendant's appeal.

Courts afford the decision of a prosecutor to deny PTI great deference. State v. Leonardis, 73 N.J. 360, 381 (1977). "[T]he level of deference which is required is so high that it has been categorized as 'enhanced deference' or 'extra deference.'" State v. Kraft, 265 N.J. Super. 106, 111 (App. Div. 1993) (citing State v. DeMarco, 107 N.J. 562, 566 (1987); State v. Dalglish, 86 N.J. 503, 513-14 n.1 (1981); State v. Hoffman, 224 N.J. Super. 149, 155 (App. Div. 1988)). Judicial review of a PTI rejection exists "to check only the most egregious examples of injustice and unfairness." DeMarco, supra, 107 N.J. at 566 (quoting Leonardis, supra, 73 N.J. at 384).

11

Before a reviewing court will suspend criminal proceedings absent prosecutorial consent, "a defendant must 'clearly and convincingly establish that the prosecutor's refusal . . . was based on a patent and gross abuse of his discretion.'" Dalqlish, supra, 86 N.J. at 509, (quoting Leonardis, supra, 73 N.J. at 382). Three categories of abuse of discretion in this context have been recognized, and the standard for when these abuses rise to the level of "patent and gross" enunciated:

> Ordinarily, an abuse of discretion will be manifest if defendant can show that a prosecutorial veto (a) was not premised upon a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgment. In order for such an abuse of discretion to rise to the level of "patent and gross," it must further be shown that the prosecutorial error complained of will clearly subvert the goals underlying Pretrial Intervention.
>
> [State v. Bender, 80 N.J. 84, 93 (1979) (citation omitted).]

A reviewing court may not substitute its discretion for that of the prosecutor. State v. Waters, 439 N.J. Super. 215, 237 (App. Div. 2015). Our scope of review is "severely limited" in light of the enhanced deference enjoyed by prosecutors. Id. at 225 (quoting State v. Negron, 178 N.J. 73, 82 (2003)).

The presumption to deny PTI created by Guideline 3(i) can only be overcome if a defendant shows "compelling reasons"

12

consisting of "something extraordinary or unusual, something 'idiosyncratic and in [the defendant's] background'". State v. Lee, supra, 437 N.J. Super. at 563 (quoting State v. Nwobu, 139 N.J. 236, 252 (1995) (alteration in original)).

We are satisfied, as was the trial judge, that the prosecutor considered all relevant factors, and did not consider any irrelevant factors, nor did the prosecutor commit a clear error in judgment in rejecting this application. The trial court applied the correct legal standard and did not err in denying defendant's appeal of her PTI rejection.

## IV.

Defendant's arguments in Points IV and V are related, namely that the trial court erred in denying her motion for judgment of acquittal or a new trial, and that the evidence presented at trial was insufficient to support a verdict of bias intimidation beyond a reasonable doubt. We address the two points together.

Defendant begins by relying upon the apparent inconsistency between the verdicts on Counts One and Two. Defendant argues that "the failure of the jury to find an intent to intimidate based on race in Count One [harassment] established there was insufficient evidence to prove that required element on Count Two [simple assault]." The State counters that the verdicts were not necessarily inconsistent on the two counts, but even if they were,

13                                                    A-5737-14T3

the bias intimidation conviction should not be disturbed because it is supported by sufficient evidence from which the jury could have reasonably found guilt beyond a reasonable doubt.

Defendant then argues that the trial evidence was not sufficient to support a conviction of bias intimidation on Count Two beyond a reasonable doubt. In her appellate brief, defendant sets forth the statutory provisions identifying the elements of bias intimidation and simple assault, as well as the statutory definition of "bodily injury," and then makes the following argument:

> The defendant's action in throwing a cup of ice water out of a car window did not cause or attempt to cause any bodily injury or serious bodily injury. No one was injured. Ms. Archut, while admitting she threw the cup, denied that it was aimed at anyone. Even if it was, at best, some ice struck [C.B.]'s shoe. Proof of simple assault is seriously lacking.
>
> The proofs were also deficient as to defendant's intent. There was nothing presented to support a purpose of Ms. Archut to intimidate anyone. Ms. Archut made no remarks or statements when [A.P.] yelled out the "n" word or later when she threw the cup. The record is devoid of any proofs of a purpose to intimidate. The reaction or interpretation of the victim of the act is insufficient to establish such a purpose.

We address defendant's second argument first. In a post-trial motion, defendant moved for a judgment of acquittal

14

notwithstanding the verdict or for a new trial. The judge denied the motion. When considering such a motion, what

> the trial judge must determine is whether, viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt.
>
> [State v. Reyes, 50 N.J. 454, 458-59 (1967).]

In reviewing the denial of such a motion, the appellate court applies the same standard to determine if a defendant should have been acquitted. State v. Moffa, 42 N.J. 258, 263 (1964).

Simple assault does not require the actual causing of an injury. An attempt to cause a bodily injury is sufficient. N.J.S.A. 2C:12-1a(1). The definition of "bodily injury" requires nothing more than "physical pain." N.J.S.A. 2C:11-1a. The jury could reasonably have found that defendant threw the cup at C.B. She missed him by only two feet, the two girls were somewhat separated from C.B., and the occupants of the car had returned to the location where the bicyclists were as a follow-up to the initial slur that had been directed at C.B. Evidence was presented, including defendant's statement to the police within an hour after the incident, that "everyone" was laughing after the original slur. And, the driver's unrefuted testimony that all

three of the backseat passengers, specifically including defendant, urged her to go back for another pass at the bicyclists was before the jury.

Putting all of this evidence together, the jury had a reasonable basis to find that defendant purposely threw the cup at C.B., intending that it hit him and cause him physical pain (or some greater injury). It is also noteworthy that the cup was described in the testimony as large, and it was thrown with the lid on it. As a result, all of the weight of the ice and water was held in until the cup made contact. As it was described in the trial testimony, when the cup hit the pavement it "exploded," with the lid flying off and the contents being expelled. This object, thrown in this manner from a rapidly moving car, was certainly capable of causing physical pain (or a greater injury) had it struck C.B. Therefore, the evidence was more than sufficient to establish beyond a reasonable doubt the offense of simple assault.

As to proof of intent to intimidate based on race, the bias intimidation statute provides for the following permissive inference: "Proof that the target of the underlying offense was selected by the defendant, or by another acting in concert with the defendant, because of race . . . shall give rise to a permissive inference by the trier of fact that the defendant acted with a

16

purpose to intimidate an individual . . . because of race." N.J.S.A. 2C:16-1b. This provision was charged to the jury, and the fact pattern established by the evidence could reasonably have induced the jury to apply it.

When the slur was made by the person sitting next to defendant in the car, the jury could have believed the testimony that all of the backseat passengers, including defendant, were laughing about it and urging the driver to circle around and pass by the bicyclists again. Throwing the cup at the same victim who was targeted by the racial slur as part of this continuum of events, could reasonably lead the jury to infer that it was not only defendant's purpose to injure C.B., but to intimidate him because of his race.

We are satisfied that all necessary elements of the underlying simple assault charge, as well as the bias intimidation charge based upon simple assault, are supported by sufficient credible evidence in the record to establish guilt beyond a reasonable doubt.

This brings us to defendant's argument regarding inconsistent verdicts. Assuming, for purposes of our analysis, that there was an inconsistency between the verdicts on Counts One and Two, such verdicts will be upheld so long as there is sufficient evidence to support the convictions beyond a reasonable doubt. Dunn v.

United States, 284 <u>U.S.</u> 390, 393, 52 <u>S. Ct.</u> 189, 190, 76 <u>L. Ed.</u> 356, 359 (1932); <u>State v. Banko</u>, 182 <u>N.J.</u> 44, 54-55 (2004). An inconsistent verdict may be the product of jury nullification, mistake, compromise, or lenity, and so, is not questioned. <u>Banko</u>, <u>supra</u>, 182 <u>N.J.</u> at 54-55.

We have already explained why the bias intimidation conviction on Count Two is supported by sufficient credible evidence as to all elements, including a purpose to intimidate based on race. We will not speculate on why the jury did not find a purpose to intimidate based on race as to the harassment charge in Count One. It could have been because of mistake, compromise, giving defendant a break, nullifying the State's action in charging her with that offense, or any other reason. Regardless of the reason, it does not impair the viability of the bias intimidation conviction based on simple assault in Count Two.

Accordingly, there is no basis to disturb the verdicts based upon insufficiency of evidence or upon any perceived inconsistency in the verdicts.

V.

Finally, we address defendant's sentencing argument. Defendant does make some arguments regarding the applicability of various aggravating and mitigating factors. However, the trial court found that the mitigating factors preponderated over

aggravating factors and that a non-custodial sentence was appropriate. On appeal, defendant does not argue that either a one-year non-custodial probationary sentence on Count One or the two-year non-custodial probationary sentence on Count Two were excessive. The argument is limited to the fact that the court imposed the sentences consecutively. Defendant argues that under the guidelines set forth in State v. Yarbough, 100 N.J. 627 (1985), the sentences should have been run concurrent, resulting in an aggregate non-custodial probationary sentence of two years. We agree.

At the time of sentencing, the judge said very little by way of Yarbough analysis:

> One thing -- one other thing I should place on the record. That the Court did analyze Yarbough in making a determination to run the harassment probationary term consecutive to the convictions under count two. I do find that the jury had spoken and determined that these were separate offenses. I believe that it's important that that be acknowledged that these are separate violations that were proven against this Defendant.
>
> . . . I understand the argument that this was sort of all one ongoing event, but I think it's important to acknowledge the separate offenses as found by the jury and that's the basis for which I determined that the harassment should run consecutive to the simple assault by bias intimidation convictions.

19

In essence, the judge merely stated that because the jury found defendant guilty of two separate offenses, they should be sentenced consecutively. That is an insufficient reason. The question is not whether two or more offenses have been committed, but whether the sentences on those offenses should run concurrently or consecutively. In Yarbough, the Court listed four factors that are relevant to this case:

> (a) the crimes and their objectives were predominantly independent of each other;
>
> (b) the crimes involved separate acts of violence or threats of violence;
>
> (c) the crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;
>
> (d) any of the crimes involved multiple victims.

Yarbough, supra, 100 N.J. at 644.

For conviction of bias intimidation based on simple assault, the theory of the State's case required linkage between the slur and the throwing of the cup four or five minutes later. In her summation, the prosecutor argued accordingly:

> The cup itself hurled at him right on the heels, or after however many minutes after this same group of people went by and the slur was yelled at him, that's a continuing communication to him. That's a continuing derogation and attack upon him.

20

Like if I give you the middle finger, you know I'm being offensive. You know I'm being rude. I'm saying something nonverbally.

And the connection between the slur being yelled and the cup being hurled at him, that makes it a continuing course of conduct. It's harassment.

So, if I prove simple assault and I prove harassment, I still got one more job. I've got to prove that those things were done with the purpose to intimidate, to frighten [C.B.] for one reason only, because he was black. That's what I have to prove and the way I'm going to prove that is through the witnesses and the words of the Defendant.

But there is a portion of the law that says if you find, if you believe that [C.B.] was targeted, he was the one they chose to yell this slur at, he was the one she chose to throw the cup of water at. If you find that she did those things just because he was black, then you can infer her purpose was to intimidate him. That's why she picked a black person.

In its appellate brief, the State presents a similar argument to us:

The evidence showed a direct connection between the racial slur and defendant's actions, her culpable intent was clear from the totality of the circumstances . . . and finally, intent was supported by the favorable inference permitted in the law to find that if defendant targeted the victim because of his race, her purpose was to intimidate him.

While we might in some circumstances remand to the trial court to reconsider the consecutive/concurrent sentencing issue

21

with a more thorough statement of reasons, we are convinced that in the circumstances of this case, the <u>Yarbough</u> factors require concurrent sentencing. The crimes and their objectives were not predominantly independent of each other. Indeed, as argued by the prosecutor, they were inextricably intertwined, with evidence from one being necessary to convict on the other. Only one of the two crimes involved an act of violence or threat of violence, namely, simple assault. Therefore, there were not separate acts of violence. The crimes were not committed at different times or separate places. They were committed within four or five minutes of each other at the very same place, all as part of an ongoing continuum of activity by defendant and her cohorts. Finally, the crimes involved only one victim.

Accordingly, we direct than an amended judgment of conviction be entered to reflect that the sentences on Counts One and Two be served concurrently.

Affirmed as modified and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5737-14T3