NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1294-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

E.R.,

     Defendant-Appellant.

_____

APPROVED FOR PUBLICATION

March 14, 2022

APPELLATE DIVISION

Submitted January 18, 2022 – Decided March 14, 2022

Before Judges Messano, Accurso and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment Nos. 18-08-1800, 18-08-1838 and 18-12-2955.

Joseph E. Krakora, Public Defender, attorney for appellant (Laura B. Lasota, Assistant Deputy Public Defender, of counsel and on the brief).

Grace C. MacAulay, Acting Camden County Prosecutor, attorney for respondent (Kevin J. Hein, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

ENRIGHT, J.A.D.

In this appeal, we consider the legal issue of whether the prosecutor properly denied defendant E.R.,[1] a middle-aged woman with a history of mental health problems, entry into the pretrial intervention program (PTI), N.J.S.A. 2C:43-12, based primarily on the belief that probation could provide a more appropriate level of supervision — without addressing the type of supervision defendant required or why it couldn't be afforded her through PTI.

Defendant appeals from her October 7, 2019 judgments of conviction, contending the trial court erred in affirming the prosecutor's denial of her application for admission to PTI. We agree, and accordingly vacate the challenged June 20, 2019 order, remanding this matter for further proceedings.

I.

Defendant was charged under three separate indictments for offenses she committed in May 2018. On May 5, 2018, defendant approached a Camden County sheriff's officer seated in a marked car. She moved to strike the officer on his head, but because he shielded himself, she hit his arm. The officer did not report he was injured during the incident. When the officer asked why she struck him, defendant responded, "because you looked like a white boy and you

---

[1] We use initials pursuant to Rule 1:38-3(c)(5).

shouldn't be here, it should be a black man." Defendant was arrested and charged with fourth-degree aggravated assault, N.J.S.A. 2C:12-1(b)(5)(a).[2]

The next day, while defendant was detained at the Camden County Jail, she struck a corrections officer who tried to check her blood sugar levels. The officer sustained a bloody nose. As a result of this incident, defendant was charged with third-degree aggravated assault under N.J.S.A. 2C:12-1(b)(5)(h).

On May 29, 2018, defendant was receiving treatment in the psychiatric ward of Cooper Hospital and struck a nurse. The nurse suffered minor scratches and experienced dizziness. Based on this event, defendant was charged with third-degree aggravated assault pursuant to N.J.S.A. 2C:12-1(b)(5)(j).

## II.

It is uncontroverted defendant suffers from mental health issues and has been diagnosed with schizoaffective disorder, bipolar type. She also has experienced paranoia, delusions, and auditory hallucinations. Moreover, defendant has a history of inpatient admissions dating back to 2010.

---

[2] Defendant's offense was elevated to aggravated assault because it was committed against a law enforcement officer. Defendant's other charges were similarly elevated to aggravated assault under N.J.S.A. 2C:12-1(b)(5)(h) and N.J.S.A. 2C:12-1(b)(5)(j), respectively, based on the protected classes of the victims.

According to defendant, she was not taking her prescribed medication in May 2018 when the assault charges were lodged against her. The record also reflects that in June 2018, she had a psychiatric episode and was hospitalized for two weeks. The day after her release, she suffered another psychiatric episode, and was found walking naked in Camden, stating "cave wom[e]n don't wear clothes." Defendant was hospitalized again for two weeks before she was referred to the Rutgers University Behavioral Health facility in July 2018. Defendant claims she was compliant with the treatment prescribed for her at this facility, which included counseling to help her understand "the dose, schedule, risks and benefits of taking and not taking" her medication.

In February 2019, defendant applied for entry into the PTI program. Her attorney submitted a letter on her behalf, describing defendant's mental health issues and symptoms, and stating defendant's mental health issues were "at the core of why she finds herself charged in the current indictments." Defense counsel supplied the State with defendant's medical records to corroborate her condition, and noted she was currently receiving treatment.

The State denied defendant's PTI application in March 2019, but limited its decision to the facts pertaining to her May 5 assault on a law enforcement

officer.  In reaching this determination, the State relied, in part, on <u>Rule</u> 3:28.[3]

Moreover, the State reviewed each of the seventeen factors enumerated in N.J.S.A. 2C:43-12(e) and found the following factors weighed against defendant's admission into PTI:

> (1) the nature of the offense;
>
> (2) the facts of the case;
>
> (3) the motivation and age of the defendant;
>
> (6) the likelihood that the applicant's crime is related to a condition or situation that would be conducive to change through . . . participation in supervisory treatment;
>
> (7) the needs and interest of the victim and society;
>
> (8) the extent to which the applicant's crime constitutes part of a continuing pattern of anti-social behavior;
>
> (9) the applicant's record of criminal and penal violations and the extent to which [the applicant] may present a substantial danger to others;
>
> (10) whether or not the crime is of an assaultive or violent nature, whether in the criminal act itself or in the possible injurious consequences of such behavior;

---

[3] Effective July 1, 2018, "<u>Rule</u> 3:28, the PTI Guidelines, and the Official Comments . . . were repealed and replaced." <u>RSI Bank v. Providence Mut. Fire. Ins. Co.</u>, 234 N.J. 459, 473 n.4 (2018).  "The new rules, <u>R.</u> 3:28-1 to -10, 'are designed to realign the PTI program to its original purpose to divert from prosecution first time offenders who would benefit from its rehabilitative components.'" <u>Ibid.</u> (quoting <u>Notice to the Bar:  Proposed New Court Rules</u> 3:28-1 through 3:28-10 (<u>Pretrial Intervention</u>), 6 (Aug. 16, 2017)).

(14) whether or not the crime is of such a nature that the value of supervisory treatment would be outweighed by the public need for prosecution;

(17) whether or not the harm done to society by abandoning criminal prosecution would outweigh the benefits to society from channeling an offender into a supervisory treatment program;

The State also considered N.J.S.A. 2C:43-12(e)(5):

the existence of personal problems and character traits which may be related to the applicant's crime and for which services are unavailable within the criminal justice system, or which may be provided more effectively through supervisory treatment and the probability that the causes of criminal behavior can be controlled by proper treatment[.]

It determined this factor weighed in favor of defendant's admission into PTI.

Lastly, the State found the following factors under N.J.S.A. 2C:43-12(e) were "not applicable" and did not weigh against defendant's admission into PTI:

(4) the desire of the complainant or victim to forego prosecution;

(11) consideration of whether or not prosecution would exacerbate the social problem that led to the applicant's criminal act;

(12) the history of the use of physical violence toward others;

(13) any involvement of the applicant with organized crime;

(15) whether or not the applicant's involvement with other people in the crime charged or in other crime is

> such that the interest of the State would be best served by processing his case through traditional criminal justice system procedures;
>
> (16) whether or not the applicant's participation in pretrial intervention will adversely affect the prosecution of codefendants[.]

In April 2019, defendant filed a motion to compel her admission into the program. The motion judge remanded the matter and directed the State to reconsider defendant's application to include all three pending aggravated assault charges. The State complied, and the next month, it again rejected defendant's PTI application, having altered its position on three factors, namely N.J.S.A. 2C:43-12(e)(3), (5), and (9).

Regarding N.J.S.A. 2C:43-12(e)(3), the motivation and age of defendant, the State determined this factor should not have been weighed against her previously and should have been assessed as a neutral factor. As for N.J.S.A. 2C:43-12(e)(5), the existence of personal problems and character traits which may be related to the applicant's crime, the State no longer viewed this factor in defendant's favor. Acknowledging "[d]efense counsel has submitted correspondence stating that defendant has 'an extensive history of hospitalizations' for issues including 'schizoaffective disorder, bipolar type,'" the State concluded

> it does not appear that there are services that defendant may require which are not available through the

criminal justice system. . . . The State is not convinced that defendant's behavior might be controlled by treatment. If defendant has already shown, on the three separate occasions, that she cannot or will not comply with treatment, the State cannot find that this factor weighs in favor of defendant's admission.

Turning to N.J.S.A. 2C:43-12(e)(9), defendant's criminal history and the extent to which she might present a substantial danger to others, the State reconsidered its previous decision to count this factor against defendant. It acknowledged defendant's pending charges represented her "first indictable charges" and she did "not have a history of penal violations." But instead of weighing this factor in defendant's favor, the State simply stated "[t]his factor does not weigh against defendant's admission."

Notably, the State again weighed N.J.S.A. 2C:43-12(e)(6), the likelihood that the applicant's crime is related to a condition or situation that would be conducive to change through participation in supervisory treatment, against defendant. The State determined

nothing has been provided to indicate this factor is applicable. . . . The State's position is that the crimes at issue here are not related to a condition or situation that would be conducive to change through participation in PTI. The State submits that this defendant would benefit more from a different level of supervision. The minimal level of supervision and requirements of the PTI program[] (when compared to adult probation, or the Mental Health Unit of Probation)[,] is not adequate to supervise defendant based upon her needs and issues.

[(Emphasis added).]

Based on its updated assessment, the State concluded defendant was "not an appropriate candidate for PTI."

Defendant again moved to be admitted into PTI over the State's objection. During argument on the motion on June 20, 2019, the State focused on the various factors it considered when denying defendant's PTI application, including N.J.S.A. 2C:43-12(e)(5) and (6). The assistant prosecutor reiterated PTI would provide a "minimal level" of supervision which was "not an adequate level of supervision to supervise [defendant] based on these three incidents that occurred in a relative short time," and PTI was "not equipped to handle any issues that [defendant] might present." Further, he contended a "mental health probation program . . . would be more suitable to address [defendant]."

After summarizing the State's assessment of the factors under N.J.S.A. 2C:43-12(e), the judge found defendant had submitted "extensive records . . . regarding . . . an extensive history of mental health disorder[s] . . . at least since 2010," and that defendant had received psychiatric treatment and been hospitalized several times. Further, the judge noted

> the State did go through each of the factors under [N.J.S.A.] 2C:43-12(e). And I would like to focus on, as the State focused on, essentially factor six because I think that goes mostly to combat the defense's argument regarding that PTI is the right type of supervision for

this defendant.  And I just do not think that it is.  I . . . agree with the State.

    . . . .

. . . [I]t's great if she's stabilized now, but my concern is . . . the [defendant] was psychotic and disorganized, and that was going back to why she was . . . admitted to Kennedy [West Pavilion] on June 5th of 2018.  She stayed there until June 19th, 2018.  Then she went to Northbrook from June 20th, 2018, to July 2nd of 2018.  She has a history of being in all of these different facilities . . . .

I . . . agree with the State that the level of supervision under PTI is simply not enough. I'm . . . happy that [defendant] seems to be stabilized at this point in time.  I'm happy that she hasn't picked up any new offenses since May 29th of 2018, but I . . . do not think . . . . the defense has . . . clearly and convincingly established that the prosecutor's refusal was based upon a patent and gross abuse of discretion.

. . . . [T]he State . . . did consider the mental health records that were submitted by the defense.  I find that . . . there is no abuse of discretion here.  The prosecutorial veto was premised upon consideration of all relevant factors, was not based upon irrelevant or inappropriate factors, and I do not find amounted to a clear error in judgment.

So, for all those reasons, the PTI appeal is denied.

The judge entered a conforming order memorializing her decision on June 20, 2019.  Four days later, defendant pled guilty to one count of third-degree aggravated assault on a health care worker, based on the May 29, 2018 incident, and one count of fourth-degree aggravated assault on a law enforcement officer,

as it related to the May 5, 2018 incident.[4]  In exchange for her pleas, the State agreed to dismiss the remaining aggravated assault charge, and recommended defendant be sentenced to concurrent terms of probation on each count, conditioned on concurrent 270-day jail terms or acceptable programs in lieu of jail.  Further, defendant agreed to submit to a mental health evaluation, follow any treatment recommendations, and complete an anger management course. On September 27, 2019, defendant was sentenced in accordance with her plea agreement.

## III.

Defendant appeals from her judgments of conviction, renewing the argument she made before the trial court, i.e., "[t]he prosecutor's rejection of [her] admission into [PTI] was an arbitrary, patent, and gross abuse of discretion which must be corrected."  Defendant particularly takes issue with the assistant prosecutor's conclusion that she could not be adequately supervised through PTI, arguing he gave "short shrift to the role that [defendant's] schizoaffective disorder played in the offenses, or her amenability to treatment, which was

---

[4]  Although defendant has not challenged the adequacy of the factual bases for her guilty pleas, the transcript of her plea colloquy raises questions as to whether she "deliberately committed" the offenses to which she pled guilty, as required by Rule 3:28-4(b)(1)(iii), or whether defendant possessed any of the culpable mental states required for conviction under N.J.S.A. 2C:12-1(a).

displayed through her compliance with her mental health treatment and medication."

Because the State: (1) failed to detail the level of supervision defendant required, considering her lack of a criminal history at age fifty-one and her recent, significant efforts to rehabilitate herself; (2) neglected to explain how the level of supervision defendant would receive on PTI differed significantly from the level she would receive on probation and why the necessary level of supervision could not be afforded to her through PTI; and (3) failed to address why defendant's lack of criminal history and compliance with mental health treatment were not weighed in favor of her entry into PTI, we are constrained to vacate the June 20, 2019 order, and remand for further proceedings.

"PTI is a 'diversionary program through which certain offenders are able to avoid criminal prosecution by receiving early rehabilitative services expected to deter future criminal behavior.'" State v. Roseman, 221 N.J. 611, 621 (2015) (quoting State v. Nwobu, 139 N.J. 236, 240 (1995)). The "primary goal" of PTI is the "rehabilitation of a person accused of a criminal offense." State v. Bell, 217 N.J. 336, 346 (2014) (citing State v. Leonardis, 71 N.J. 85, 98 (1976)). "It is designed 'to assist in the rehabilitation of worthy defendants, and, in the process, to spare them the rigors of the criminal justice system.'" State v.

Randall, 414 N.J. Super. 414, 419 (App. Div. 2010) (quoting State v. Watkins, 193 N.J. 507, 513 (2008)).

Because PTI decisions are "a quintessentially prosecutorial function," State v. Wallace, 146 N.J. 576, 582 (1996), our review of a prosecutor's denial of a PTI application is "severely limited," State v. Negran, 178 N.J. 73, 82 (2003). We therefore afford prosecutors "broad discretion to determine if a defendant should be diverted." State v. K.S., 220 N.J. 190, 199 (2015) (citing Wallace, 146 N.J. at 582). However, "[i]ssues concerning the propriety of the prosecutor's consideration of a particular [PTI] factor are akin to 'questions of law'" and must be reviewed de novo. State v. Denman, 449 N.J. Super. 369, 376 (App. Div. 2017) (quoting State v. Maddocks, 80 N.J. 98, 104 (1979)). In such instances, "there is a relatively low threshold for judicial intervention," Watkins, 193 N.J. at 520, and "courts should exercise independent judgment in fulfilling their responsibility to maintain the integrity and proper functioning of PTI as a whole," State v. Dalglish, 86 N.J. 503, 510 (1981).

If a "reviewing court determines that the 'prosecutor's decision was arbitrary, irrational, or otherwise an abuse of discretion . . . ' the reviewing court may remand to the prosecutor for further consideration." K.S., 220 N.J. at 200 (quoting Dalglish, 86 N.J. at 509). "A remand to the prosecutor affords an opportunity to apply the standards set forth by the court 'without supplanting the

prosecutor's primacy in determining whether [PTI] is appropriate in individual cases.'" Ibid. (quoting Dalglish, 86 N.J. at 514).

Additionally, a reviewing court may overturn a prosecutor's rejection of PTI when a defendant "clearly and convincingly establish[es] that the prosecutor's decision constitutes a patent and gross abuse of discretion." Watkins, 193 N.J. at 520 (citation omitted). A patent and gross abuse of discretion occurs when "the [PTI] denial: '(a) was not premised upon a consideration of all relevant factors, (b) was based upon a consideration of irrelevant or inappropriate factors, or (c) amounted to a clear error in judgment.'" State v. Lee, 437 N.J. Super. 555, 563 (App. Div. 2014) (quoting State v. Bender, 80 N.J. 84, 93 (1979)).

"In order for such an abuse of discretion to rise to the level of 'patent and gross,' it must further be shown that the prosecutorial error complained of . . . clearly subvert[ed] the goals underlying [PTI]." Roseman, 221 N.J. at 625 (quoting Bender, 80 N.J. at 93). In other words, a defendant satisfies this heightened standard upon establishing not only an abuse of discretion, but also that the prosecutor's decision "ha[d] gone so wide of the mark sought to be accomplished by PTI that fundamental fairness and justice require judicial intervention." Watkins, 193 N.J. at 520 (quoting Wallace, 146 N.J. at 582-83). "Where a defendant can make that showing, a [reviewing] court may admit

a defendant, by order, into PTI over the prosecutor's objection."  Roseman, 221 N.J. at 625 (citing Dalglish, 86 N.J. at 513).

Although each county's PTI program may vary, N.J.S.A. 2C:43-12(e) enumerates a uniform, non-exhaustive list of seventeen factors a prosecutor must consider in determining a defendant's "amenability to correction" and "potential responsiveness to rehabilitation" through PTI.  Watkins, 193 N.J. at 520 (citing N.J.S.A. 2C:43-12(b)).  Rule 3:28 contains similar considerations for weighing a defendant's amenability to PTI, and mandates, in part, "[i]f the crime was . . . deliberately committed with violence or threat of violence against another person . . . the defendant's application should generally be rejected."  R. 3:28-4(b)(1)(iii).

Once a prosecutor considers the appropriate statutory factors and Rules of Court, the prosecutor also "must make an individualized assessment of the defendant, taking into account all relevant factors."  K.S., 220 N.J. at 202. "Because mental health issues impact that assessment, the prosecutor is required to consider a defendant's mental illness," ibid. (citing State v. Hoffman, 399 N.J. Super. 207, 214-15 (App. Div. 2008)), "the applicant's effort to seek help for a disorder[,] and the applicant's progress in such program or therapy," Negran, 178 N.J. at 85.  "Those considerations bear directly on the applicant's suitability to respond to . . . rehabilitation while subject to PTI supervision."  Ibid.

Governed by these principles, we are satisfied the assistant prosecutor's denial of defendant's PTI application "was not premised upon a consideration of all relevant factors" and the matter should be remanded for further consideration. Bender, 80 N.J. at 93.

Initially, we note the State denied defendant's second PTI application, in part, due to the language referenced in Rule 3:28-4(b)(1)(iii). While the Court noted in K.S., "[t]here is a 'presumption against acceptance' into [PTI] for defendants who have committed certain categories of offenses," 220 N.J. at 198 (quoting Watkins, 193 N.J. at 520), we have cautioned the presumption is "not a mandate . . . [but] 'only a vehicle to elaborate upon [the] statutory criteria' while still vesting ultimate decision[-]making authority in the prosecutor." Lee, 437 N.J. Super. at 564 (quoting Wallace, 146 N.J. at 586).

Additionally, the assistant prosecutor declared that defendant could not be adequately supervised through PTI, given that it provided a "minimal level" of supervision. But he failed to specify what level of supervision defendant required at that point. Such information was critical, considering defendant had no criminal history leading up to the events of May 2018, and had remained offense-free for over a year by the time the judge rendered her decision on defendant's request to enter the PTI program.

Further, although the assistant prosecutor was supplied with defendant's mental health records and advised by defense counsel she was compliant with her mental health treatment, the assistant prosecutor did not explain why the supervisory services offered through probation were unavailable to defendant if she was admitted into PTI. Absent this essential comparison of services available through PTI versus probation, and given the State's failure to detail why defendant would not be amenable to PTI supervision, despite her complete lack of a criminal history and purported compliance with her mental health treatment, we are persuaded defendant was deprived of the comprehensive individual assessment to which she was entitled from the State when it evaluated her suitability for PTI supervision.

In State v. Fitzsimmons, we ordered a remand after concluding the State "abused its discretion by failing to adequately account for the self-willed, vigorous rehabilitation defendant ha[d] undergone." 286 N.J. Super. 141, 144, (App. Div. 1995). In that case, the defendant pled guilty to two counts of burglary and one count of distributing a controlled substance near a school zone. Id. at 143. After struggling with drug addiction, Fitzsimmons applied to PTI. Id. at 145. The State initially rejected his application, but we remanded the matter so the State could explain its "concern that the short-term supervision characteristic of PTI admission would be inadequate to insure defendant's

rehabilitation."  Ibid.  We also directed the prosecutor to reconsider Fitzsimmons's PTI application and "focus . . . on the issue of whether despite defendant's remarkable rehabilitation, the countervailing public interest nevertheless demands prosecution of these . . . offenses."  Id. at 146.

Here, like the defendant in Fitzsimmons, defendant argued she made substantial progress toward rehabilitation after the May 2018 incidents.  Further, she represented she was compliant with her mental health treatment.  Moreover, the motion judge remarked at argument that defendant "seem[ed] to be stabilized" and had not "picked up any new offenses."  Yet the record does not demonstrate how defendant's efforts to rehabilitate herself and her progress in treatment factored into the State's decision to deny her PTI application.

As we have noted, when the State fails to adequately explain its reasoning for how it has assessed the relevant statutory factors, as it did here, a remand is warranted.  See State v. Mickens, 236 N.J. Super. 272, 277-78 (App. Div. 1989).

Given the passage of time, the State's review of defendant's PTI application should be conducted anew, and its assessment must include not only consideration of defendant's mental health issues and ongoing treatment, if any, but also a more robust explanation of its evaluation of the factors set forth in N.J.S.A. 2C:43-12(e).  Similarly, considering how much time has passed since the State last considered defendant's PTI application, she must be afforded the

opportunity to supply the State with any current information bearing on her application. See State v. Coursey, 445 N.J. Super. 506, 512-13 (App. Div. 2016). Once the State has considered defendant's updated application, it shall advise the judge if it still opposes defendant's entry into PTI. We are confident the judge, informed by defendant's behavior while on probation for well over two years, at that point will be in a superior position to assess whether the State has properly considered defendant's suitability for PTI. Should the State again reject defendant from PTI and the judge finds such a determination constitutes a patent and gross abuse of its discretion, we order the judge to vacate defendant's convictions and enter an order admitting defendant into PTI. We leave it to the court's discretion to determine if defendant should receive credit for time spent on probation in determining the length of defendant's required participation in the program. On the other hand, if the prosecutor still opposes her admission, and the judge affirms the prosecutor's decision, defendant's judgments of conviction shall stand.

Vacated in part and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION